**Diane ARNETH and Renee Brown, Regina Williams, Jane Doe on behalf of themselves and all others similarly situated, Plaintiffs,**

**v.**

**George GROSS, in his capacity as Commissioner of the New York City Human Resources Administration; Caesar Perales, in his capacity as Commissioner of the New York State Department of Social Services; Monsignor Robert Arpie, in his capacity as Director of Child Care of Catholic Charities and Executive Vice President and Chief Executive Officer of Mission of the Immaculate Virgin and Sister Marie Bernadette in her capacity as Executive Director of the Mission of the Immaculate Virgin, Defendants.**

**No. 86 Civ. 3296 (RO).**

United States District Court,
S.D. New York.

Oct. 20, 1988.

Jeffrey C. Thrope, New York City, for plaintiffs; Jeffrey C. Thrope, James M. Morrissey, Martin Guggenheim, of counsel.

Davis Polk & Wardwell, New York City, for defendants Monsignor Robert Arpie and Sister Marie Bernadette; Richard E. Nolan, Whitney L. Schmidt, George Vuoso (Law Clerk), of counsel.

Robert Abrams, Atty. Gen. of State of N.Y., New York City, for defendant Perales; Tarquin Jay Bromley, Asst. Atty. Gen., of counsel.

Frederick A.O. Schwarz, Jr., Corp. Counsel of New York City, New York City, for defendant Gross; Diane J. Morgenroth, Thomas C. Mansfield, of counsel.

## OPINION AND ORDER

OWEN, District Judge.

Plaintiffs Renee Brown and Regina Williams are foster children placed by the City of New York in group home foster care with the Mission of the Immaculate Virgin, a Catholic agency. They move for an order preliminarily enjoining defendants from confiscating their contraceptive devices and prescriptions and permitting them the option of practicing contraception and for class certification.

Defendant George Gross is the Commissioner of New York's Human Resources Administration; Caesar Perales is the Commissioner of New York State's Department of Social Services. Both agencies administer and supervise child foster care placement in New York City. Defendant Monsignor Robert Arpie is the Director of Child Care of the Catholic Charities of the Archdiocese of New York and Executive Vice President and Chief Executive Officer of the Mission. Sister Marie Bernadette is the Executive Director of the Mission.

New York has historically depended upon non-governmental child-care facilities for the care of children outside their homes. As the various waves of immigrants came to New York over many decades, many of these child-care institutions operated and continue to operate under sectarian auspices. The Mission is one example of this, having been founded by the Catholic Church in 1871 for the care of homeless newsboys of New York City, thereafter expanding its services to care for orphaned, neglected and destitute boys

and girls. As of 1986 there were over 15,000 New York City children being cared for by voluntary agencies including those affiliated with the Catholic, Protestant and Jewish faiths. Of this total, over 4,000 are cared for by agencies affiliated with the Archdiocese of New York and these include not only Catholic but a substantial number of non-Catholic placements. At present the Mission cares for approximately 550 children.

There is no question that artificial contraception is violative of the principles and teaching of the Catholic Church, and, it appears, in April 1986, the Mission suddenly determined to require adherence to a policy flowing from that doctrine not to permit girls in the Mission's group homes to use or possess on Mission premises contraceptive drugs or devices and requiring the transfer to another agency of girls who could not be dissuaded from such use.[1]

The plaintiffs seek to establish a class of those affected by the Mission's said determination, asserting that the policy implementation creates for each of them a significant health risk due to unwanted pregnancies in addition to the collateral negative aspects surrounding abortions (irreparable injury). Positing the likelihood of success on the merits under the law, they urge that a preliminary injunction should issue against implementation of the Mission's policy in the foster care homes it maintains.[2]

The legal principles I see to be operative here can be simply stated.

1) Under the establishment clause of the United States Constitution, while a state may accommodate religion, it may not impermissibly foster it.[3]

2) To the extent that the Mission's foster care services are financed with federal, state or city funds, the Mission is engaged in state action under the fourteenth amendment, and thus controlled by the said establishment clause.[4]

3) While the right of a religious organization to the freedom of its religious beliefs is absolute and is protected by the free exercise clause of the first amendment[5], providing a residence for a foster child is not a religious activity and is not made such by the fact that it is provided by an organization with religious affiliations.[6]

■ 4) Minors have a constitutional privacy right to practice artificial contraception absent compelling state considerations to the contrary,[7] and this is not diminished because they are in foster care.[8]

1. While this has apparently long been the Mission's policy, it appears, according to plaintiff Diane Arneth, the Medical Coordinator for the Mission, that for five years prior to April 11, 1986, the policy had neither been enforced nor even called to her attention and she (Arneth) up to that time had in fact been furnishing family planning information and medical services to the foster girls and had seen to the availability and keeping of records of forms of birth control so provided.

I further note that the Mission was under State and City oversight during this period and no conflicts with the foregoing were ever brought to the City or State's attention and had it been, I am advised the City and State would have acted promptly under the circumstances.

2. The Mission has been operating under an informal stay of the implementation of its policy since June 20, 1986 by agreement with the Court.

3. *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). *See also Corporation of the Presiding Bishop v. Amos,* 483 U.S. 327, 107 S.Ct. 2862, 2867, 97 L.Ed.2d 273 (1987).

4. *Wilder v. Bernstein,* 848 F.2d 1338, 1341 (2d Cir.1988) (religiously affiliated childcare agencies in New York City fulfill what would otherwise be a state function). *See also Blum v. Yaretsky,* 457 U.S. 991, 1002–05, 102 S.Ct. 2777, 2784–86, 73 L.Ed.2d 534 (1982); *Perez v. Sugarman,* 499 F.2d 761, 765 (2d Cir.1974).

5. *United States v. Grismore,* 564 F.2d 929, 932 (10th Cir.1977), *cert. denied,* 435 U.S. 954, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978).

6. *Bowen v. Kendrick,* —— U.S. ——, 108 S.Ct. 2562, 2576, 101 L.Ed.2d 520 (1988).

7. *Carey v. Population Services International,* 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977).

8. *Lady Jane v. Maher,* 420 F.Supp. 318 (D.Conn. 1976), *aff'd mem. sub nom. Maloney v. Lady Jane,* 431 U.S. 926, 97 S.Ct. 2628, 53 L.Ed.2d 242 (1977). Federal and state legislation reflect this constitutional right by mandating that family planning services be afforded to minors receiving governmental benefits, including those in foster care. *See* 42 U.S.C. § 602(a)(15) (providing for programs offering family planning ser-

Viewed against the foregoing, the Mission, in this secular branch of its work, is engaged in state action and is impermissibly fostering religion in violation of the establishment clause and has, in my view, the option of either a) enforcing its stated policy prohibiting its charges' use or possession of contraceptive drugs or devices, but forgoing federal, state or city funds, or b) accepting such funds and relinquishing any requirement of adherence to such of its religious doctrines as conflict with its charges' constitutional privacy rights. Simply put, if it wishes to enforce its policy and insist on the transfer to other agencies those of its charges who will not adhere, it may do so, but must then operate with private funds.[9]

Plaintiff's motion for class certification is granted to the extent of establishing a plaintiff class of all those, male and female, who were in residence at a Mission home during the period April 11, 1986 to June 20, 1986 [10] by reason of placement under any foster care program financed by city or state or federal government funds and who sought to use or possess on the premises contraceptive drugs or devices and were denied such use or possession by reason of the enforcement of the Mission's policy.

The plaintiffs also seek preliminary injunctive relief against the City and State of New York. It is established from plaintiff's own moving affidavits, and specifically that of Diane Arneth, that until April 10, 1986, whatever the Mission's policy was, it was not being acted upon—Ms. Arneth didn't even know of it—and therefore to all outward appearances, the Mission was not acting in derogation of any constitutional privacy rights of children in its foster care. Both the city and state conducted appropriate periodic reviews in performance of their duties of oversight and nothing came to their attention. Upon their awareness of the Mission's action in April 1986, however, both entities acted properly to deal with the perceived constitutional violation.[11]

Given the foregoing, preliminary injunctive relief is accordingly denied as to the State and City of New York. A plaintiff class is established as defined above. Finally, the attorneys for the class and for the Mission defendants are directed to appear before the Court on December 9, 1988 in Courtroom 128 prepared to discuss such preliminary injunctive relief to the plaintiff class as against the Mission as is appropriate and necessary in light of this opinion.

The foregoing is so ordered.

---

vices to relatives and dependent children receiving federal aid to needy families, including "minors who can be considered to be sexually active"); N.Y.Soc.Serv.L. § 365–a(3)(c) (McKinney 1983) (providing medical services for the needy, including family planning services for sexually active children under 21 who desire such services and supplies).

9. Nothing expressed herein is, however, to be taken as a limitation on the right—indeed duty—of those charged with the responsibility for the upbringing of those placed in their foster care, whether sectarian or not, to exercise general parental oversight to guide and instruct in those principles of conduct generally accepted for responsible living. *Bowen v. Kendrick,* supra.

10. It was on this date that the Court's requested informal stay of enforcement of the policy was consented to by the Mission, see supra.

11. The mere fact that Monsignor Arpie stated the Mission's now-attacked policy in depositions at which city and state lawyers were present in earlier years does not place a burden upon the city or state to act where according to Ms. Arneth, the Mission's head nurse in this area, see supra, the policy was not being carried out. I do not see the state as having a duty to merely take issue with a policy *statement* where the policy is concededly not in force.