**Gerry TRAUTZ, Floyd Rhein, individually and on behalf of all others similarly situated, and Disability Advocates, Inc., Plaintiffs,**

**v.**

**Leon WEISMAN, Mollie Weisman, Eugene Weisman, Kones Paramananthan, Weisman's Rockland Manor—a Home for Adults, Weisman's Rest Hotel, Inc. and its Proprietors, Agents, Servants, and/or Employees, Defendants.**

**No. 92 Civ. 0534 (GLG).**

United States District Court, S.D. New York.

Dec. 11, 1992.

Disability Advocates, Inc., Albany, NY (Timothy A. Clune, Cailie Currin, of counsel), for plaintiffs.

Brody & Fabiani, New York City (Adam Simms, of counsel), for defendants.

## MEMORANDUM DECISION

GOETTEL, District Judge.

### I. FACTUAL BACKGROUND

This proposed class action arises out of allegedly deplorable conditions which exist at Weisman's Rockland Manor (the Manor) in New York City, New York, "an adult care facility established and operated for the purpose of providing long-term residential care, room, housekeeping, personal care and supervision to five or more adults unrelated to the operator." 18 N.Y.C.R.R. § 485.2. Adult homes of this type must be licensed and are subject to extensive state regulation. The Manor is a partnership comprised of Eugene Weisman, Leon Weisman and Mollie Weisman. The partnership leases the property used by the Manor from Weisman's Rest Hotel, a corporation. Leon, Eugene and Mollie Weisman are alleged to be owners, operators and administrators of the adult home; Kones Paramananthan is a manager and employee of the partnership, the Manor.

The individual defendants have been licensed to operate the Manor for at least twenty years. According to the complaint, since 1972, Rockland Manor has been cited by the Department of Social Services ("DSS"), a state agency charged with the regulation of adult homes, for numerous violations of state regulations. These violations cover areas such as admission stan-

dards, resident protections, food service, resident services, and environment standards.

The Manor serves various individuals including former residents of county and state-run psychiatric facilities, homeless persons, and private citizens who voluntarily admit themselves. Defendants describe the Manor as a sort of half-way house for mentally and emotionally disturbed people. The Manor charges its boarders a monthly rent. Many of its residents receive financial assistance from state and/or federal programs.

Plaintiffs' complaints about the standard of services provided by the Manor are extensive. A mere sampling of the allegations in the complaint describes a dirty, poorly-operated facility with little regard for the care of the residents who are often incapable of caring for themselves. For example, general allegations in the complaint include, among other things, that defendants failed to provide nutritionally balanced and adequate meals, that the kitchen is unsanitary, that food is improperly stored, that the facility is in a state of disrepair, and that the staff, insufficient in number, is inadequately trained. In addition, plaintiffs claim that illegal drug transactions occur at the facility and that crack vials routinely litter the floors.

Plaintiff Trautz asserts that he was a resident of the Manor from November 1989 until July 1990. During his stay, he claims that his living conditions bordered on the inhumane. He alleges that his bedroom was infested with cockroaches and waterbugs and that he would awake during the night to find these vermin crawling on him. He claims that he received clean sheets and pillowcases only once a month and that his roommate, who was incontinent, received sheets only once a week despite the fact that they were continually soaked with urine. Other allegations concern the lack of security, the theft of personal property,

the lack of privacy, and the existence of only two showers for eighty residents. Trautz claims that on more than one occasion he was propositioned by prostitutes who were present in the facility. Floyd Rhein, the other named plaintiff, claims that he lived at the Manor for roughly five years and asserts similar allegations.

The complaint, brought by the proposed class representatives and Disability Advocates, Inc., a not-for-profit corporation which provides advocacy and legal representation to people diagnosed with mental illness, asserts ten causes of action.[1] The federal claims are based on violations of the RICO statutes, 18 U.S.C. § 1961 *et seq.;* the Rehabilitation Act, 29 U.S.C. § 794; civil rights under 42 U.S.C. § 1983; conspiracy under 42 U.S.C. § 1985(3); the due process clauses of the Fifth and Fourteenth Amendments; and the equal protection clause of the Fourteenth Amendment. Plaintiffs also bring pendent state claims for negligence, intentional infliction of emotional distress, breach of contract, and violation of § 235–b of the New York Real Property Law. The defendants are moving to dismiss the complaint in its entirety.

## II. DISCUSSION

■ As is often stated, a court can only dismiss a complaint where "it appears beyond doubt that plaintiff can prove no set *of facts in support of his claim which would* entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Branum v. Clark,* 927 F.2d 698, 705 (2nd Cir.1991). In reviewing a motion to dismiss under Fed.R.Civ.P. 12(b)(6), we must accept all the facts alleged in the plaintiffs' complaint as true. *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972).

■ On a motion to dismiss for failure to state a claim upon which relief can be granted, the court generally does not have

1. Disabilities Advocates, Inc. (DAI) is an authorized protection and advocacy program under the Protection and Advocacy for Mentally Ill Individuals Act of 1986 (the PAMII Act), 42 U.S.C. § 10801 *et seq.* Curiously, DAI, an authorized PAMII agency in New York State, has statutory authority pursuant to 42 U.S.C. § 10805(a), to pursue legal, administrative, and other appropriate remedies for individuals with mental illness who are receiving care and treatment in New York, even in actions brought against the State.

authority to consider matters outside the pleadings. *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir.1991). Although defendants have submitted an affidavit along with the motion papers, this is outside the pleadings and the court shall not consider it in deciding this motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).

### 1. RICO
#### a. Standing and Proximate Cause Issues

■ Defendants object to the RICO claims on several grounds. They begin by attacking the RICO claims en masse that plaintiffs lack standing to bring any RICO claims because they have not alleged injury in fact as required under the civil RICO statute. To have standing, plaintiffs must show "(1) a violation of § 1962; (2) injury to business or property; and (3) causation of the injury by the violation." *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir.1990). In *County of Suffolk v. LILCO*, 907 F.2d 1295 (2d Cir.1990), the Second Circuit held that in a case involving mail fraud, plaintiff must show that the misrepresentations were relied upon and caused the injuries alleged. *Id.* at 1311. Thus, to have standing under RICO, plaintiffs must show that their injuries were proximately caused by defendants' RICO predicate acts. *Sedima, S.P.R.L. v. Imrex Co., Inc., et al.*, 473 U.S. 479, 495, 105 S.Ct. 3275, 3284, 87 L.Ed.2d 346 (1985).

■ Plaintiffs generally allege that defendants committed mail and wire fraud "to defraud the residents of their money [and] property." According to paragraph 112(c) of the complaint, "DSS has relied on these false or fraudulent representations of the defendants in the issuance of the initial Operating Certificate and subsequent renewals." The wire fraud was allegedly achieved through defendants' fraudulent appropriation of the residents' money while failing to provide them with adequate services. As a result of both mail and wire fraud, plaintiffs claim that they have suffered injury from "living in hazardous, degrading, filthy and dangerous conditions."

Defendants argue that the false representations alleged by plaintiffs were direct-ed at the DSS in defendants' efforts to obtain an operating license. Therefore, defendants contend that even if true, such fraud constitutes a fraud against the government, not against the plaintiffs. Defendants argue that the deceived and the injured are two distinct groups with no causal connection (the government was allegedly deceived for a license and the patients were allegedly injured by the Manor's living conditions).

Plaintiffs respond that DSS's reliance upon defendants fraudulent representations by mail enabled the Manor to maintain operations and continue taking plaintiffs' money while providing substandard services. Plaintiffs also claim that the wire fraud involved depositing plaintiffs' checks into their personal accounts, an act directly tied to plaintiffs' injuries.

The issue is whether this is close enough causation for a civil RICO claim. Because the alleged mail frauds were not directed at plaintiffs but rather at the DSS, the causal relationship with plaintiffs' injuries is not direct. Using the mails to fraudulently obtain a license, if true, might have enabled defendants to enact and maintain their scheme to defraud plaintiffs into paying good money for substandard care. While the court might infer this chain of causation, plaintiffs have not explicitly alleged this in their complaint. As a result, plaintiffs fail to allege a causal connection between defendants' mail fraud on DSS and the injuries plaintiffs sustained. Thus, because plaintiffs lack standing to bring the mail fraud claim, we dismiss this claim.

■ The alleged wire fraud is more closely tied to the injuries that plaintiffs allege. Unlike the mail fraud claim, plaintiffs' wire fraud claim alleges that defendants committed fraud directly against plaintiffs, rather than the DSS. Plaintiffs further allege that they were deprived of their property, namely their personal income, as a direct result of defendants' wire fraud. Although plaintiffs make general allegations, they specifically identify only one instance of alleged wire fraud, namely that "around April 1990 the defendants unlawfully opened, signed, cashed, and depos-

ited into defendants' account, plaintiff Trautz' Internal Revenue Service refund check in the amount of approximately $150.00." While there may be a sufficient causal connection between the fraud and plaintiff's injuries to support standing, we do not perceive any use of the wires.

■ At this point, we note that to establish a pattern of racketeering activity, at least two predicate acts must be alleged against the defendant. *Sedima,* 473 U.S. at 495, 105 S.Ct. at 3284. This circuit has stated that to sustain a RICO claim, a plaintiff must allege that the defendant agreed to commit at least two predicate acts of racketeering. *U.S. v. Teitler,* 802 F.2d 606, 613 (2d Cir.1986).

Because plaintiffs' mail fraud claim is dismissed, plaintiffs are left with only their one specific pleading of wire fraud. This one predicate act is insufficient to sustain a RICO claim. Alleging at least two predicate acts is the basis of a RICO claim and plaintiffs' entire RICO claim must fall without it. In addition to this general failure in plaintiff's RICO pleading, we will also find deficiencies in plaintiffs' pleading particular to the individual subsections of RICO.

### b. § 1962(a) Claim

■ Section 1962(a) states that it is unlawful:

> for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to invest, directly or indirectly, any part of such income, in the acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(a) (1984). A violation of § 1962(a) is not established by "mere participation in predicate acts of racketeering." *Quaknine v. MacFarlane,* 897 F.2d 75, 82 (2d Cir.1990). An injury must arise from the investment or use of racketeering income to constitute a violation of § 1962(a). *Id.* at 82–83. "[I]t is the use or investment of the racketeering income which violates this provision." *Vista Co. v. Columbia Pictures, Inc.,* 725 F.Supp. 1286, 1299 (S.D.N.Y.1989). Plaintiffs must show

that money derived from racketeering activity at the Manor was invested into the home and that plaintiffs have suffered an injury related to that investment.

■ Defendants challenge plaintiffs' § 1962(a) claim arguing that plaintiffs have failed to adequately plead any investment of racketeering income in an interstate enterprise. Besides arguing that plaintiffs have pled no injury by reason of "investment of racketeering income," defendants contend that even if so pled, no connection would exist between such investment and the Manor's conditions alleged as injuries.

Plaintiffs argue that defendants received income from their racketeering at the adult home—including residents' funds—and used or invested that income to acquire an interest in the operation of the adult home. But the complaint nowhere specifies how defendants "used or invested" income from their operation of the Manor to acquire an interest in the establishment or operation of an interstate enterprise.

Here, plaintiffs have stated that defendants fraudulently represented conditions at the Manor to the state and took the residents' funds and valuables. Plaintiffs' injury arises out of the poor operation of the Manor, specifically the "hazardous, degrading, filthy, and dangerous conditions, as well as the inadequate, substandard care and non-existent services." However, plaintiffs fail to allege any facts regarding use or investment of racketeering income in the Manor and that their injuries actually arose from the use or investment of racketeering income in the Manor. In their complaint, plaintiffs have not shown a link between the investment and their injuries which are loss of their property and the poor conditions at the Manor.

The factual allegations are not well developed and we cannot say that plaintiffs are able to prove facts that would establish injury as a result of defendants' investment of racketeering income in the operation of the home. Although we dismiss plaintiffs' RICO claim for a failure to allege two predicate acts, we nevertheless determine that plaintiffs' § 1962(a) claim

itself would be inadequately pled even were we to have concluded that the mail fraud allegations were sufficient.

### c. § 1962(b) Claim

■ Section 1962(b) provides that "it shall be unlawful for any person through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b) (1984). In plain language, plaintiffs must allege that (1) an enterprise existed affecting interstate commerce and (2) that each defendant acquired or maintained an interest in or control over the enterprise through a pattern of racketeering. A claim under § 1962(b) must allege an "injury resulting from the acquisition or control of an enterprise through a pattern of racketeering activity." *Official Publications v. Kable News Co.*, 775 F.Supp. 631, 631 (S.D.N.Y. 1991). Hence, there must be a showing of a relationship or nexus between the racketeering activity and the interest or control obtained. *Id.*

■ Plaintiffs allege that defendants through racketeering have been "able to continue operating an adult home and consequently caused injury to plaintiffs." Plaintiffs additionally allege that it is only through defendants' "criminal conduct that the enterprise continues to exist."

Defendants' sole argument for dismissal of this claim is that § 1962(b) "seems to be directed toward illicit takeovers of pre-existing businesses," *McCain v. Phoenix Resources, Inc.*, 1989 WL 146212 at 16 (S.D.N.Y.1989) and that plaintiffs have made no such allegation. This dicta, however, is not persuasive on its own.

In any case, plaintiffs fail to allege sufficient facts to establish that their injury arose from defendants' control or maintenance of the Manor through racketeering. The complaint fails to specify the connection between defendants' racketeering activity and their interest in the criminal enterprise, the Manor. Although defendants ran the home and controlled its conditions, plaintiffs fail to connect defendants' racketeering with the maintenance of the home. Plaintiffs never assert that defendants' fraudulent behavior enabled defendants to maintain an interest in or control of any enterprise. Accordingly, plaintiffs' § 1962(b) claim is insufficiently pled.

### d. § 1962(c) Claim

■ The parties also dispute the sufficiency of plaintiffs' § 1962(c) claim. Section 1962(c) provides that:

[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c) (1984). The standard for maintaining a § 1962(c) action is whether "(1) the person was enabled to commit the predicate offenses 'solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise,' or (2) that the predicate offenses were 'related to the activities of that enterprise.'" *Vista Co.*, 725 F.Supp. at 1298. In this circuit, a corporate entity cannot simultaneously be a RICO enterprise and a RICO person who conducts the affairs of the enterprise. *Bennett v. U.S. Trust Co. of N.Y.*, 770 F.2d 308, 315 (2d Cir.1985), *cert. denied*, 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986).

■ Here, plaintiffs have alleged that Leon, Mollie, and Eugene Weisman, the Manor itself, Weisman's Rest Hotel, and Kones Paramananthan, together constitute the enterprise under RICO. Defendants argue that plaintiffs' § 1962(c) claim must fail because the complaint alleges that the Manor is both the enterprise and a RICO person allegedly engaged in racketeering. Plaintiff notes that the complaint does not allege that the Manor was both the enterprise and a RICO person. Rather, the complaint alleges that all of the defendants together are the enterprise.

It is clear from the language in the complaint that plaintiffs are alleging that the

Manor is the vehicle used by defendants to engage in their fraudulent behavior. Furthermore, it is obvious that plaintiffs also consider the Manor as the "person" conducting the affairs of the enterprise. Thus, the complaint places the Manor in both roles and therefore, plaintiffs' complaint against the Manor itself must be dismissed. We note that the remaining defendants are adequately named as RICO defendants, but as stated earlier, plaintiffs' RICO claim is dismissed for a failure to properly allege two predicate acts.

### e. § 1962(d) Claim

■ Section 1962(d) provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d) (1984 & Supp.1992). This circuit has held that, to "plead a RICO conspiracy, plaintiffs must allege that each defendant agreed to commit ... two predicate acts of racketeering." *Official Pubs.,* 775 F.Supp. at 636. "[T]he core of a RICO civil conspiracy is an agreement to commit predicate acts," therefore, at the very least, a RICO claim must allege facts that imply such an agreement. *Hecht,* 897 F.2d at 25. Mere knowledge of the conspiracy is insufficient; there must be an "actual knowing participation" by the defendant. *U.S. v. Gleason,* 616 F.2d 2, 16–17 (2d Cir.1979), *cert. denied,* 444 U.S. 1082, 100 S.Ct. 1037, 62 L.Ed.2d 767 (1980).

Here, plaintiffs fail to sufficiently plead a RICO conspiracy under § 1962(d). Plaintiffs generally allege that defendants committed fraud, however, they fail to allege any facts that reveal an agreement by each of the defendants to commit these predicate acts. And, as we stated earlier, plaintiffs failed to allege that defendants committed two predicate acts. Section 1962(d) further requires a conspiracy to commit these predicate acts. Again plaintiffs' complaint is deficient because it fails to plead both these requirements. Thus, plaintiffs' claim under § 1962(d) is also inadequately pled.

### f. Particularity of Mail and Wire Fraud Claims

■ More generally, defendants argue that the predicate acts of mail and wire fraud for the RICO claim have not been pled with sufficient particularity under Fed.R.Civ.P. 9(b). *See Frota v. Prudential–Bache Securities,* 639 F.Supp. 1186 (S.D.N.Y.1986). With a fraud claim, the time, place, speaker, and content of the alleged misrepresentation must be specified. *See Luce v. Edelstein,* 802 F.2d 49, 54 (2d Cir.1986). Also, factual circumstances giving rise to a strong inference of the requisite fraudulent intent must be pled. *Quaknine,* 897 F.2d at 80.

■ Defendants stress that the factual allegations underlying the mail and wire fraud claims are woefully inadequate, specifying neither the time, place, speaker, or content of the fraudulent statements, simply parroting the statutory language. Plaintiffs maintain that the complaint sufficiently alleges that defendants sent fraudulent mail to DSS to maintain and renew their license, enabling them to continue their scheme to defraud the residents.

As we stated earlier, plaintiffs' mail fraud claim is dismissed for a failure to plead adequate causal connection between the mail fraud and their injuries. However, in reviewing plaintiffs' mail fraud claim, we also find it insufficient for its lack of particularity. Plaintiffs have generally identified the sorts of mail fraud they claim that defendants practiced on the DSS. They speak of fraudulent representations concerning their application for an operating license and subsequent renewals as well as their compliance with regulations governing the services supposedly offered to their residents. But plaintiffs do not allege specific facts surrounding defendants' mail fraud, including when the fraudulent mailings were made, the content of the mailings, or who was responsible for them.

■ Plaintiffs make general allegations of wire fraud, namely the depositing of plaintiffs' checks from out-of-state banks into defendants own personal accounts, what plaintiffs allege was an unlawful mingling and interstate diversion of funds, and the taking of checks sent to plaintiff

Trautz from his mother. However, plaintiffs detail only one instance of wire fraud, specifically that "around April 1990 the defendants unlawfully opened, signed, cashed and deposited into defendants' account, plaintiff Trautz' Internal Revenue Service refund check in the amount of approximately $150.00."

This allegation as pled fails to establish a claim of wire fraud. Plaintiffs allege no facts to support that defendants used the wires to defraud plaintiffs. By failing to identify the time, place, speaker, and content of the alleged fraud, this claim fails to satisfy the pleading requirements of a wire fraud claim. Thus, plaintiffs fails to plead claims under both mail and wire fraud.

### 2. Section 1983 Claim

■ The defendants' main argument for dismissal of the § 1983 claim is that plaintiffs have failed to plead that the Manor was a state actor. The complaint alleges that the DSS regulates every aspect of the Manor's operations and the Manor could not exist without federal and state funds. Defendants argue that these facts, even if true, are insufficient to amount to acting under color of state law, considering that the Manor is privately owned and operated.

While the state may regulate residential care programs, it was not responsible for the specific conduct plaintiffs complain of, namely medical and treatment decisions made by physicians and administrators. Defendants compare this case to *Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982), in which the Court held that a private nursing home was not a state actor simply because it received 90% of its funds from state Medicaid reimbursements. Plaintiffs view *Blum* as inapplicable because it involved a suit against state officials for actions of private nursing home officials.

Here, the dispositive issue is whether defendants' actions "sufficiently received the imprimatur of the State so as to make it state action." *See Blum*, 457 U.S. at 1003, 102 S.Ct. at 2785. To resolve this issue, we focus on the comprehensiveness of the state regulations and whether or not the Manor is performing a "public function," or a "traditional governmental function."

Plaintiffs cite cases involving child care institutions, an area in which the state traditionally exercises a dominant influence over private institutions. Citing case law, defendants argue that regulation alone is not enough to make their conduct equivalent to state action.

On the present record, we are not certain how closely the residential care programs are associated with the state. The regulatory structure which governs their creation and operations appears extensive. Indeed, New York has said that such programs for adults and children are:

> a matter of vital concern to the people of this state. In order to more effectively protect and assure the life, health, safety and comfort of adults and children who must be cared for away from their homes, the department of social services acting directly or through social services districts, and with the cooperation of other state agencies, shall have the comprehensive responsibility for the development and administration of programs, standards and methods of operation, and all other matters of state policy, with respect to residential care programs for children and adults and all facilities and agencies, whether public or private.

New York Social Services Law § 460. This might support the notion that New York's regulation of adult homes stamps the Manor's activities with the color of state law even though state officials do not make the decisions inside the facility.

However, in resolving the issue of what is or is not a traditional government function, courts in this district have looked to who provides the services historically. *See Wilder v. Bernstein*, 848 F.2d 1338, 1341 (2d Cir.1988); *Arneth v. Gross*, 699 F.Supp. 450, 451–452 (S.D.N.Y.1988). Defendants allege that adult home care has historically been carried out by private organizations such as the YMCA and the Salvation Army. However, the record is insufficient to evaluate this allegation at this time and on a

motion to dismiss we make no attempt to do so.

While the regulatory regime for adult care facilities is known, the present record does not fully detail the state's relationship with these defendants. Such information might be important in deciding whether defendants should be treated as state actors. Given our uncertainty regarding the state's relationship with defendants and the historic role of the state in adult home care, we cannot say with any confidence based solely on the pleadings, whether defendants were acting under color of state law. We thus decline to dismiss plaintiffs' § 1983 cause of action.

### 3. 29 U.S.C. § 794: The Rehabilitation Act Claim

 The Rehabilitation Act states that "no otherwise qualified individual with handicaps ... shall, person[s] ... "solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a) (Supp.1992). Defendants argue: (1) that the Manor receives no federal assistance and is therefore not subject to § 794; and (2) the disabled residents received no housing or medical benefits of less quality than non-disabled residents. In short, they contend that plaintiffs claims are aimed at the adequacy of the housing and treatment of all the Manor's residents; they do not suggest that non-disabled residents received better treatment than the disabled resident. Therefore, defendants claim that § 794 is an inappropriate vehicle for their claims and the remedies they seek.

Plaintiffs argue that they have expressly alleged that defendants receive federal financial assistance to operate their adult home. In paragraph 106 of the complaint, plaintiffs state that "[t]he enterprise receives most if not all of its financial resources, from the state and federal government." Further, the complaint alleges in paragraphs 136–139 discrimination based on plaintiffs' disabilities.

Because both factual questions are obviously in dispute, we cannot dismiss plaintiff's Rehabilitation Act claim at this point. If it turns out that no federal funds are used by defendants, this claim may be resolved on summary judgment. However, we do not concern ourselves with this matter at this point.

### 4. § 1985(3) Conspiracy Claim

 In order to state a claim under 42 U.S.C. § 1985(3), plaintiffs must allege that defendants engaged in "1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Gray v. Town of Darien*, 927 F.2d 69, 73 (2d Cir.1991), *cert. denied*, — U.S. ——, 112 S.Ct. 170, 116 L.Ed.2d 133 (1991).

Defendants argue that the complaint fails to state a claim under § 1985(3) because "it is rather unlikely" that plaintiffs can represent a class of people protected by § 1985. Furthermore, defendants argue that plaintiffs have not alleged that the conspiracy was carried out with discriminatory animus. Plaintiffs argue that they, and the other disabled persons residing at the home, constitute a class of persons protected by § 1985.

Defendants have cited no case law holding that the disabled cannot constitute a class under § 1985. Considering the developing nature of the law under the Americans with Disabilities Act, we are not convinced that persons with disabilities in the nature of those of the plaintiffs and other residents of the home cannot constitute a class of persons protected by § 1985.

Although paragraph 132 of the complaint alleges a conspiracy to deprive plaintiffs and other disabled residents of the home of their rights to equal protection, plaintiffs are merely parroting the language of the statute. We earlier failed to find sufficient allegations of conspiracy under RICO and

we again fail to find sufficient factual allegations of conspiracy under § 1985. Without alleging any facts to support the alleged conspiracy by defendants to deprive plaintiffs of their civil rights, plaintiffs' complaint is deficient. Because of this deficiency in the complaint, plaintiffs' § 1985 claim fails and we do not address whether discriminatory animus is sufficiently alleged. Therefore, we also dismiss plaintiffs' § 1985 claim.

5. Conclusion

Based on the foregoing reasons, we grant defendants' motion to dismiss in part and deny in part. In summary, we dismiss plaintiffs' mail and wire fraud claims, and consequently all the RICO claims, the Rehabilitation Act claim, and the conspiracy claim under 42 U.S.C. § 1985. We decline to dismiss plaintiffs' civil rights claim under 42 U.S.C. § 1983.

However, leave to replead is liberally granted, particularly when a plaintiff brings suit alleging violations of his civil rights under § 1983. *Ricciuti v. N.Y.C. Transit Authority,* 941 F.2d 119 (2d Cir. 1991). In keeping with this tradition, we grant plaintiffs leave to amend their complaint, directing them to replead so that defendants are afforded a fair understanding of the substance of their complaint and whether there is a legal basis for recovery. *Id.* at 123. Although plaintiffs' entire RICO claim falls because of a failure to meet the minimum requirement of two predicate acts, plaintiffs should heed our additional comments regarding the deficiency of the rest of its RICO claim.

Finally, since we are declining to dismiss some of plaintiffs' federal causes of action we maintain jurisdiction over the various pendent state claims for negligence, intentional infliction of emotional distress, breach of contract, and violations of New York Real Property Law § 235–b on hazardous conditions. We note, in this respect, that this is truly a state court action (indeed, if the allegations are true, the state should be a plaintiff) which is struggling to be a federal case. In conclusion, defendants' motion to dismiss is granted in part and dismissed in part. Plaintiffs are given leave to amend their complaint within thirty days of this decision in order to comply with the pleading requirements as discussed above.

SO ORDERED.