**Erwin PROTTER, Fast Food Franchise, Inc., Fast Food Franchise of Broadway, Inc., and Fast Food Franchise of Steinway, Inc., Plaintiffs,**

v.

**NATHAN'S FAMOUS SYSTEMS, INC., Howard M. Lorber, Wayne Norbitz, Raymond Dioguardi and Carl Paley, Defendants.**

No. 95 CV 1408.

United States District Court, E.D. New York.

May 11, 1996.

---

Law Offices of Barry Levin by Barry Levin, Kelly Guthy, New York City, for Plaintiffs.

Arkin Schaffer & Supino by Stanley S. Arkin, Hyman L. Schaffer, Harry B. Feder, New York City, for Defendants.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge:

Presently before the Court is a motion to dismiss the plaintiffs' Amended Complaint, brought by the defendants Nathan's Famous Systems, Inc. ("Nathan's"), Howard M. Lorber ("Lorber"), Wayne Norbitz ("Norbitz"), Raymond Dioguardi ("Dioguardi") and Carl Paley ("Paley," collectively the "defendants") pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b) on the grounds that plaintiffs' Amended Complaint is time barred, that it fails to state a claim upon which relief can be granted, and that it fails to plead fraud with the required particularity.

This lawsuit derives from the defendants' sale of three Nathan's franchises in the New York area to the plaintiff Erwin Protter, as president of the plaintiffs Fast Food Franchise, Inc. ("Fast Food"), Fast Food Franchise of Broadway, Inc. ("Broadway"), and Fast Food Franchise of Steinway, Inc. ("Steinway" collectively the "plaintiffs"). Protter's investment apparently failed to live up to expectations and, on April 7, 1995, he

filed his original Complaint in this action seeking to recover actual damages, treble damages, punitive damages, costs and attorneys' fees in the amount of $13,088,359 based on violations of: the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68; the New York State Franchise Sales Act, N.Y.Gen.Bus.Law §§ 680–95; the Federal Trade Commission Act 15 U.S.C. § 57a; and for common law fraud and negligent misrepresentation. Subsequently, the plaintiffs withdrew their claims of negligent misrepresentation and FTCA violations, leaving the RICO claims as the sole basis for federal jurisdiction. On August 3, 1995, the defendants moved to dismiss the Complaint pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. The plaintiffs opposed the defendants' motion and alternatively cross moved for leave to amend the Complaint in the event the defendants' motion was granted.

On October 21, 1995, this Court granted the defendants' motion to dismiss with respect to the plaintiffs' RICO claims for failure to state a viable cause of action under 18 U.S.C. § 1962 and dismissed the remaining state law claims for want of subject matter jurisdiction. *See Protter v. Nathan's Famous Systems, Inc.*, 904 F.Supp. 101 (E.D.N.Y.1995). The plaintiffs were granted leave to amend the Complaint within 30 days. *Id.* Familiarity with the Court's earlier decision is presumed.

Adhering to the court's admonitions, the plaintiffs filed their Amended Complaint on November 20, 1995. Once again, plaintiffs seek to recover compensatory damages, treble damages, punitive damages and costs and attorneys' fees based on violations of RICO, the New York State Franchise Sales Act, and for common law fraud. In response, on March 6, 1996, the defendants moved to dismiss the Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b).

## I. *Background*

The following facts are taken entirely from the Amended Complaint. Erwin Protter is a New York resident domiciled in Queens, New York. Protter is the president of the three corporate plaintiffs, all of which are New York corporations with their principal places of business located in Queens, New York. Nathan's is a Delaware corporation with its principal place of business in Westbury, New York. Defendant Lorber is the Chairman of the Board of Directors; Norbitz is President, a Director and Chief Operating Officer; Dioguardi is Vice President of Finance and Chief Financial Officer; and Paley is the Vice President of Franchise Development.

Nathan's is the franchisor of the "Nathan's Famous" franchise system, which is famous for its hot dogs, crinkle-cut french fries and a wide array of other fast food items. In February 1993, the defendants completed an initial public offering ("IPO") raising approximately $15 million. The purported objective of the public offering was expansion. Specifically, the defendants sought to open new company-owned restaurants in the New York metropolitan area, and repay senior debt. Subsequent to the IPO, the plaintiffs commenced negotiations with Nathan's for the purchase of three Nathan's franchises at the following locations: (1) 389 Avenue of the Americas, New York, New York; (2) 864 Broadway, New York, New York; and (3) 31–16 Steinway Street, Astoria, New York. On March 17, 1993, Protter entered into a Franchise Agreement on behalf of Fast Food to purchase the Nathan's franchise at 389 Avenue of the Americas. On November 16, 1993, Protter entered into a Franchise Agreement on behalf of Broadway to acquire the Nathan's franchise at 864 Broadway. And on February 28, 1994, Protter entered into a Franchise Agreement on behalf of Steinway to obtain the franchise at 31–16 Steinway Street. Protter personally guaranteed each of these purchases. The plaintiffs now contend that the purchases were induced by the defendants' oral and written material misrepresentations, which Protter reasonably relied upon during the course of the negotiations.

The Amended Complaint alleges a myriad of misrepresentations regarding the Nathan's franchise system. Protter claims that the defendants flaunted their expertise and "know how," which they would use to assist Protter in support of his investments. Prot-

ter alleges that the defendants offered training, support and perpetual assistance and guidance in the operation of the three restaurants in order to help compensate for his lack of experience in the industry. None of this assistance was ever forthcoming. Furthermore, Protter contends that Nathan's misrepresented that the profit margins of its franchises were higher than that of its competitors as a result of its limited menu and reduced labor and food costs. Specifically, Nathan's represented that Protter could reasonably expect food costs to comprise 24% of sales, labor costs to comprise 22% of sales, and an after tax cash return of 25%, notwithstanding the defendants' knowledge that these figures were inaccurate.

Moreover, Protter asserts that the defendants misrepresented the franchisor's overall success. For example, Nathan's represented that many of their company-owned stores were highly profitable in an effort to induce Protter's purchase of the franchises. Yet Nathan's failed to explain that in December 1992, sales for Coney Island Hot Dogs, Inc., a multiple unit franchisee operating in the northeast had a 24.7% decline in sales with individual stores experiencing declines as high as 46.5%. Moreover, sales declines were pervasive in 1993, culminating in a 12.9% decline in December 1993. Similar declines were experienced by Nathan's largest franchisee in Florida, Coney Island Hot Dogs of Florida, which had a 26.5% decline in sales in December 1992 with individual stores losing as much as 30.7%, and declining sales throughout 1993 culminating with a 17.3% drop in December 1993.

Protter further alleges that Nathan's misrepresented its resolve with respect to its purported use of the $15 million raised in the initial public offering. The plaintiff alleges that he was told that those funds were to be allocated towards improvement of the franchisor's infrastructure and the opening of 19 new company-owned restaurants. Since then however, no steps have been taken to implement this program.

The Amended Complaint further alleges that Nathan's stated that it would approve all site locations and menus to maximize use of space and customer preferences. Yet with respect to the restaurant located at 389 Avenue of the Americas, the defendants never informed plaintiffs of the failure of a company-owned store located across the street ten years earlier.

In addition to these misrepresentations, Protter alleges several omissions of material facts in order to induce the franchise sales. Specifically, the plaintiffs refer to the defendants' failure to disclose significant hidden costs associated with running the franchises and the severity of sales declines that other stores were experiencing over the last several years; that other franchises had found themselves in a variety of financial difficulties at the time the plaintiff entered into the Franchise Agreements; that prior to entering the franchise agreements the defendants failed to admit that they were parties to lawsuits; and that the defendants received kickbacks from third parties, presumably for referring the plaintiff to these third parties for services rendered while operating the franchises.

Finally, Protter asserts that he was not the only franchisee to have been defrauded by the defendants. The plaintiffs claim that from September through November 1993, one Steven Lenter ("Lenter") was also persuaded to purchase a Nathan's franchise based on misrepresentations and omissions similar to those outlined above. The plaintiffs also submit an affidavit from Daniel Rapoport ("Rapoport"), owner of Bay Plaza Famous, Inc., a Nathan's Famous franchisee. Like Protter and Lenter, Rapoport claims that he was defrauded by Nathan's into purchasing a franchise. The Court expressly notes however, that the Amended Complaint contains no allegations with respect to Rapoport and the Court cannot consider the affidavit on a Rule 12(b)(6) motion to dismiss.

Protter claims more than $1.8 million in damages, including franchise fees, construction and equipment expenses, legal expenses, and rental expenses due to the delays in opening the restaurants, all as the result of the defendants' unlawful activities. In addition, Protter asserts that by virtue of the promised 25 percent return, he has lost $1 million in profits and stands to lose another

$10 million. As a result, he seeks $13,088,-359 in monetary damages.

## II. *Discussion*

### A. *The standard of review*

■ On a motion to dismiss for failure to state a claim, "the court should not dismiss the complaint pursuant to Rule 12(b)(6) unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir.1985) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)); *see also IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1052–53 (2d Cir.1993). The Second Circuit stated that in deciding a Rule 12(b)(6) motion a Court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transport Local 504,* 992 F.2d 12, 15 (2d Cir.1993); *see also Rent Stabilization Ass'n of the City of New York, v. Dinkins,* 5 F.3d 591, 593–94 (2d Cir.1993), *citing, Samuels,* 992 F.2d at 15.

■ It is not the Court's function to weigh the evidence that might be presented at a trial, the Court must merely determine whether the complaint itself is legally sufficient, *see Goldman,* 754 F.2d at 1067 and in doing so, it is well settled that the Court must accept the allegations of the complaint as true, *see LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991); *Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.,* 879 F.2d 10, 14 (2d Cir.1989), *cert. denied,* 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990), and construe all reasonable inferences in favor of the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974); *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1099 (2d Cir.1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1643, 104 L.Ed.2d 158 (1989).

The Court is mindful that under the modern rules of pleading, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), and that "[all

pleadings shall be so construed as to do substantial justice," Fed.R.Civ.P. 8(f).

### B. *The defendants' motion*

The defendants move to dismiss the Amended Complaint in its entirety on several alternative grounds. Initially, they argue that the plaintiffs' claims are time barred based on the franchise agreements' provision requiring that all lawsuits arising thereunder be brought within one year from the date they accrue. Alternatively, the defendants contend that even if the Court finds that Protter's claims are not time barred, he has failed to state a claim upon which relief can be granted. In an effort to expedite this analysis, the Court will address the RICO claims first, because dismissal of those claims would divest the Court of subject matter jurisdiction and obviate the need to consider the remaining arguments.

### *The RICO claims*

The defendants make several arguments in favor of dismissal of the plaintiffs' RICO claims. The plaintiffs allege three separate causes of action under RICO pursuant to 18 U.S.C. § 1962(a), (b) and (c). Initially, the defendants contend that all three claims must be dismissed because Protter has failed to allege a pattern of racketeering necessary to support any RICO cause of action brought pursuant to section 1962. Alternatively, the defendants assert that the each of the three claims is deficient as follows: (1) the section 1962(a) claim should be dismissed because the plaintiffs are unable to establish injury as the result of investment of racketeering income; (2) the section 1962(b) claim should be dismissed for failure to allege acquisition or maintenance of an interest in an enterprise, namely Nathan's, through a pattern of racketeering; and (3) the section 1962(c) claim should be dismissed for failure to allege a RICO enterprise separate and distinct from the persons comprising the enterprise. The Court will address each of these arguments in turn.

### 1. *Pattern of racketeering*

■ Initially, the defendants contend that Protter has failed to plead the required pattern of racketeering to support his RICO

claims. In order to demonstrate a pattern of racketeering under 18 U.S.C. § 1962, a plaintiff must establish that the conduct in question amounts to, or constitutes a threat of, continuing racketeering activity. *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 240, 109 S.Ct. 2893, 2901, 106 L.Ed.2d 195 (1989). "Continuity is both a closed- and open-ended concept, referring to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.,* 492 U.S. at 241, 109 S.Ct. at 2901–02; *see also GICC Capital Corp. v. Technology Finance Group, Inc.,* 67 F.3d 463 (2d Cir.1995) (discussing the difference between open ended and closed ended continuity). Predicate acts continuing over a few weeks or months and threatening no future criminal conduct do not satisfy this continuity requirement. *H.J. Inc.,* 492 U.S. at 241, 109 S.Ct. at 2901–02.

In *United States v. Aulicino,* 44 F.3d 1102, 1111–12 (2d Cir.1995), the Second Circuit has recently elaborated on this standard stating that:

> in cases where the acts of the defendant or the enterprise were inherently unlawful, such as murder or obstruction of justice, and were in pursuit of inherently unlawful goals, such as narcotics trafficking or embezzlement, the courts generally have concluded that the requisite threat of continuity was adequately established by the nature of the activity, even though the period spanned by the racketeering acts was short. In contrast, in cases concerning alleged racketeering activity in furtherance of endeavors that are not inherently unlawful, such as frauds in the sale of property, the courts have generally found no threat of continuing criminal activity arising from conduct that extended over even longer periods.

Further elaborating on this important distinction, the Second Circuit noted that where three murders were committed over a nine month period, a discussion of continuity was not even necessary because the acts by their very nature threatened repetition satisfying the continuity prong of RICO. *Aulicino,* 44 F.3d at 1111–12, discussing, *United States v.*

*Simmons,* 923 F.2d 934 (2d Cir.), *cert. denied,* 500 U.S. 919, 111 S.Ct. 2018, 114 L.Ed.2d 104 (1991). Conversely, the *Aulicino* court also recognized that where the sale of an 80% interest in a business was involved, "rather than any inherently unlawful goal," a trial court's instructions that a few weeks or months might constitute a substantial period of time was erroneous. *Aulicino,* 44 F.3d at 1112, discussing, *Metromedia Co. v. Fugazy,* 983 F.2d 350, 368–69 (2d Cir.1992), *cert. denied,* 508 U.S. 952, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993) (upholding a RICO verdict because the predicate acts did not span weeks or months but rather years and the erroneous instruction was held to be harmless).

As the Court recognized in its earlier decision, under the rule in *Aulicino,* the unlawful activity alleged in this case, namely purchasing franchises, is not inherently unlawful. Rather it is the same type of activity that the *Aulicino* Court referred to in its analysis of *Metromedia,* the sale of a property interest. Because the activity alleged in the original Complaint lasted only three months and addressed three transactions between two sets of parties, the defendants' original motion to dismiss was granted.

In the Amended Complaint however, the plaintiffs have further alleged that at the end of 1993 one Steven Lenter was similarly defrauded into purchasing a Nathan's franchise as the result of a variety of representations by the defendants regarding training programs, operational support and prior litigation. The defendants nevertheless contend that these allegations are still insufficient to establish the required continuity and resurrect an otherwise deficient cause of action. The Court disagrees.

As stated above, the original complaint contained allegations of misrepresentations spanning three months and containing three franchising agreements between two sets of parties. Such transactions, which were not inherently unlawful under *Aulicino,* constitute at best nothing more than a closed ended scheme like the one rejected by this Court in *Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 999–1000 (E.D.N.Y. 1995). However, the Court finds that the

additional allegations regarding Lenter give rise to what might eventually constitute an open ended scheme as these contentions carry with them the threat of repetition in the future sufficient to defeat a 12(b)(6) motion. Accordingly, the defendants' motion to dismiss Protter's RICO claims based on a failure to plead a pattern of racketeering is denied.

In reaching this conclusion, the Court is mindful that the facts alleged span less than a year, and indeed may constitute activity too sporadic to support a RICO claim at trial. Nevertheless, at this early stage in the litigation, the Court is unwilling to deny the plaintiffs discovery on this ground. *See Azrielli v. Cohen Law Offices*, 21 F.3d 512, 521 (2d Cir.1994) (continuity may be established by demonstrating that the predicate acts are part of a "regular way of conducting the defendant's ongoing legitimate business") (internal quotation omitted).

### 2. *Section 1962(a)*

 The defendants further contend that the plaintiffs' allegations pursuant to 18 U.S.C. § 1962(a) must be dismissed because the Amended Complaint fails to allege "injury" as a result of the defendants' investment of racketeering income. Section 1962(a) provides that:

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to ... invest, directly or indirectly, any part of such income, or the proceeds of such income, in the acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(a). In *Ouaknine v. MacFarlane*, 897 F.2d 75, 82–83 (2d Cir. 1990), the Second Circuit recognized that:

[u]nder the plain language of this section, a violation of § 1962(a) consists of investing income derived from a pattern of racketeering activity to acquire an interest in, establish, or operate an enterprise; the violation is not established by mere participation in predicate acts of racketeering. Accordingly, ... for a violation of

§ 1962(a) [to occur], a plaintiff must allege injury 'by reason of' defendants' investment of racketeering income in an enterprise.

Failure to satisfy this two part test will result in the dismissal of the plaintiffs' claims. *See R.C.M. Executive Gallery Corp. v. Rols Capital Co.*, 901 F.Supp. 630, 642 (S.D.N.Y. 1995) (collecting cases). Moreover, allegations that investment of the income derived from the pattern of racketeering enabled the defendants to continue their fraudulent behavior will not pass 12(b)(6) muster. *Id., citing, Update Traffic Sys., Inc. v. Gould*, 857 F.Supp. 274, 282–83 (E.D.N.Y.1994) ("Th[e] investment-injury requirement is not satisfied merely because the defendant/enterprise has reinvested money from the racketeering acts back into its own operations, thus enabling the scheme to continue.... [P]laintiff must show that it was injured by the investment itself").

Applying this standard the Court finds that the plaintiffs have failed to plead a violation of 18 U.S.C. § 1962(a). As stated above, section 1962(a) requires allegations of an injury resulting from the investment of racketeering income. Allegations that the predicate acts caused injury, or that the defendants reinvested their income in an enterprise conducting unlawful activity will not suffice. Although the Amended Complaint alleges that the defendants "used or invested, directly or indirectly, part or all of such [racketeering] income, or the proceeds of such income, in the operation of the enterprise" which resulted in "injury," there are no factual allegations indicating that the injury was the result of the investment of racketeering income as opposed to the alleged predicate acts. Such vague conclusory allegations will not survive a 12(b)(6) motion. *See R.C.M. Executive Gallery Corp.*, 901 F.Supp. at 642. Accordingly, the defendants' motion to dismiss the plaintiffs' RICO claims pursuant to section 1962(a) is granted with prejudice.

### 3. *Section 1962(b)*

 The defendants contend that Protter's claims pursuant to 18 U.S.C. § 1962(b) should similarly be dismissed. Section

1962(b) prohibits a person from acquiring or maintaining an interest or control in an enterprise through a pattern of racketeering. 18 U.S.C. § 1962(b). To survive a motion to dismiss, the complaint must "specify the connection between defendants' racketeering activity and their interest in the . . . enterprise." *Trautz v. Weisman,* 809 F.Supp. 239, 245 (S.D.N.Y.1992); *see also Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1411 (3d Cir.), *cert. denied,* 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991) ("under § 1962(b), a plaintiff must allege a specific nexus between control of a named enterprise and the alleged racketeering activity"); Gregory P. Joseph, Civil RICO, A Definitive Guide 39 (1992), *citing, Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162 (3d Cir.1989) (injury in fact is insufficient to state a claim under section 1962(b) unless the injury was caused by the acquisition or maintenance of the interest in the enterprise through a pattern of racketeering); *see also Danielsen v. Burnside–Ott Aviation Training Ctr., Inc.,* 941 F.2d 1220, 1231 (D.C.Cir.1991) ("plaintiffs must allege an 'acquisition' injury, analogous to the 'use or investment injury' required under § 1962(a) to show injury by reason of a § 1962(b) violation").

Applying these clear standards, the Court dismisses the plaintiffs' claims brought pursuant to 18 U.S.C. § 1962(b). The only statements contained in the Amended Complaint regarding acquisition or maintenance of an interest in an enterprise are general conclusory allegations that the individual defendants "acquired or maintained an interest in, and/or control of the enterprise Nathan's Famous System, Inc., by engaging in a fraudulent scheme to induce the plaintiffs into" purchasing the franchises. Conspicuously absent from these allegations are any facts that would establish either that the individual defendants had acquired or maintained control of Nathan's through a pattern of racketeering. Accordingly, the defendants' motion to dismiss the plaintiffs' RICO claims pursuant to 18 U.S.C. § 1962(b) is granted with prejudice.

### 4. *Section 1962(c)*

■ The defendants assert that the plaintiffs final RICO claims under 18 U.S.C.

§ 1962(c) should also be dismissed because the Amended Complaint fails to distinguish the RICO "persons," namely the individual defendants, from the RICO "enterprise," namely Nathan's. Section 1962(c) provides that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).

The plaintiffs allege that the enterprise is Nathan's. The precise allegation set forth in paragraph 112 of the Amended Complaint is that "Defendant Nathan's Famous System, Inc. is an "enterprise" within the meaning of 18 U.S.C. § 1961(4) and 1962(a)."

■ The "person," as that term is applied in section 1962(c) must conduct the affairs of the "enterprise" through a pattern of racketeering activity. The enterprise and the person must be distinct. *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,* 30 F.3d 339, 344 (2d Cir.1994); *Official Publications, Inc. v. Kable News Co.,* 884 F.2d 664, 668 (2d Cir.1989). "[B]y virtue of the distinctness requirement, a corporate entity may not be both the RICO person and the RICO enterprise under section 1962(c)." *Riverwoods,* 30 F.3d at 344. Consistent with this principle, the Second Circuit recently stated:

> [b]ecause a corporation can only function through its employees and agents, any act of the corporation can be viewed as an act of such enterprise, and the enterprise is in reality no more than the defendant itself. *See Brittingham [v. Mobil Corp.,* 943 F.2d 297, 301 (3d Cir.1991).] Thus, where employees of a corporation associate together to commit a pattern of predicate acts in the course of their employment and on behalf of the corporation, the employees in association with the corporation do not form an enterprise distinct from the corporation. *See Old Time Enters. v. Interna-*

*tional Coffee Corp.*, 862 F.2d 1213, 1217 (5th Cir.1989)

*Id.; Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 263 (2d Cir.1995) (quoting, *Riverwoods* ); *see also R.C.M. Executive Gallery Corp.*, 901 F.Supp. at 640 (same).

Reviewing this standard, the Court finds that the plaintiffs have failed to allege a violation of 18 U.S.C. § 1962(c). The Amended Complaint alleges that the individual defendants are "persons" under RICO and that Nathan's is the RICO "enterprise." The plaintiffs do not allege any facts which would indicate that the individual defendants were acting outside the scope of their authority as officers and directors of Nathan's, when they allegedly fraudulently induced Protter to purchase three franchises based on a variety of misrepresentations. The Court finds that the fraudulent activity alleged falls squarely within the Second Circuit's *Riverwoods* analysis, namely that the employees of the defendant corporation allegedly associated together in the course of their employment and on behalf of the corporation. Stated simply, the defendant employees and the defendant corporation do not form an enterprise separate and distinct from the corporation. In sum, the plaintiffs have failed to allege an enterprise distinct from the RICO persons. As a result, the defendants' motion to dismiss the plaintiffs' claims pursuant to 18 U.S.C. § 1962(c) is also granted with prejudice.

### 5. *The remaining state law claims*

Having dismissed all of the plaintiffs' RICO claims, the only remaining causes of action are brought pursuant to state law. As a result, the Court lacks subject matter jurisdiction to hear this case. While the Court recognizes that it may exercise supplemental jurisdiction over these remaining state claims pursuant to 28 U.S.C. § 1367, at this very early stage of the litigation, the Court declines to exercise such discretion. *See Travelers Ins. Co. v. Keeling*, 996 F.2d 1485, 1490 (2d Cir.1993) (addressing the discretion to exercise jurisdiction over state law claims); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) (discussing pendent jurisdiction).

Accordingly, the plaintiffs' remaining state law claims are dismissed without prejudice.

### III. *Conclusion*

After reviewing the parties' submissions and hearing oral argument, and for the reasons set forth above, it is hereby

ORDERED, that the defendants' motion to dismiss the Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6) is granted; and it is further

ORDERED, that the Clerk of the Court is directed to close this case.

SO ORDERED.