Susan MOSES, Plaintiff,

v.

Deborah MARTIN & Deborah Martin Agency, Inc., Defendants.

No. 04 Civ. 1533(SAS).

United States District Court, S.D. New York.

Dec. 3, 2004.

534

Carmen S. Giordano, Law Office of Carmen S. Giordano, New York City, for Plaintiff, Susan Moses.

Candace C. Carponter, The Law Firm of Candace C. Carponter, New York City, for Defendants, Deborah Martin, Deborah Martin Agency, Inc.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

## I. INTRODUCTION

Susan Moses, a celebrity wardrobe stylist, brings this action against Deborah Martin Agency, Inc. ("DMA") and its principal Deborah Martin ("Martin") (collectively, "defendants"). Moses alleges that, after entering into an agreement (the "Agreement") with DMA, under which DMA would act as her manager, DMA failed to remit payments owed her that were collected by DMA from Moses's customers, and that on multiple occasions Martin lied about whether DMA was paid, and if so, how much. Moses alleges breach of contract, negligent misrepresentation, unjust enrichment, conversion, fraud and violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO").[1] Defendants now move under Rules 12(b)(1), 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure to dismiss the breach of contract, conversion, fraud, negligent misrepresentation and unjust enrichment claims against Martin, the conversion and fraud claims against DMA and the RICO claims against both defendants.[2] For the reasons that follow, defen-

---

1. 18 U.S.C. § 1960 et seq.

2. Even if I were to grant defendants' motion in its entirety, the breach of contract, negligent misrepresentation and unjust enrichment claims against DMA would remain before me because "this Court has jurisdiction pursuant to 28 U.S.C. § 1332 on the basis of diversity of citizenship, in that the plaintiff is a resident and domiciliary of the State of California, and defendant Martin is a citizen of the State of New York." Amended Complaint ("Compl.") ¶ 2. Accordingly, the Rule 12(b)(1) motion must be denied.

dants' motion is granted in part and denied in part.

## II. FACTS

### A. The Agreement

Susan Moses, a California resident, provides wardrobe styling services to celebrities.[3] In or about 1997, Moses entered into an agreement with DMA, a New York corporation owned and operated by Martin.[4] The Agreement provided that DMA would handle all of the logistical aspects of Moses's celebrity styling business, including directly communicating with plaintiff's celebrity clients in order to negotiate fees and other terms for services, billing and processing revenues received by DMA from plaintiff's clients, and arranging for plaintiff's transportation and accommodations.[5] In exchange for these services, DMA was to keep twenty percent of the revenue that DMA collected from Moses's clients as payment for each job, and was to remit the remaining eighty percent to Martin.[6]

DMA entered into "deal memos" with Moses's and other stylists' celebrity clients, via U.S. mail and facsimile, using interstate telephone wires, "establishing the fees (daily or per job rates) for the stylists (third party beneficiaries to these contracts), the dates and other terms of the services to be provided by the DMA stylists, wardrobe or other expenses, transportation and accommodation costs."[7] Moses did not participate in the deal making process, nor was she privy to the terms of the deal memos.[8] Moses was thus "entirely dependent on defendants" as her agent "to deal fairly and honestly by (1) reporting the true terms of the styling contracts they negotiate; (2) reporting the receipt of payments from the clients; and (3) remitting full and correct payments timely" to her.[9]

### B. The Alleged Scheme

Moses alleges, however, that Martin and DMA "failed to perform their obligations and breached the Agreement, took and stole plaintiff's money, lied and cheated plaintiff and engaged in a pattern of fraudulent behavior in furtherance of defendants' efforts to steal money from plaintiff."[10] Martin and DMA allegedly perpetrated the scheme in order to steal from Moses and other celebrity stylists.[11]

After Moses or another stylist completed a job, DMA would bill the client via U.S. mail or facsimile lines. The client would remit payment to DMA, at which point, pursuant to the Agreement, DMA was to retain twenty percent of the collected fee and to remit the remaining portion to the stylist. "Instead, defendants diverted the proceeds of plaintiff's and other stylists' jobs to defendant Martin's person-

---

3. *See* Compl. ¶ 4.

4. *See id.* ¶ 10. Though the Amended Complaint states that the Agreement was "oral and/or written," *id.* ¶ 26, the record contains no evidence of a written agreement between the parties.

5. *See id.* ¶¶ 10–11, 25–26.

6. *See id.* ¶¶ 11–12.

7. *Id.* ¶ 27.

8. *See id.*

9. Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss Certain Claims in the Amended Complaint ("Pl. Mem.") at 3.

10. Compl. ¶ 13.

11. *See id.* ¶ 33 ("Defendants also used the same methods to steal money from other DMA stylists.").

al use and excessive lifestyle:"[12] In other instances, DMA "would pay the stylists far less than the eighty percent portion the stylist was entitled to receive."[13] When the stylists spoke with Martin to inquire about the job, Martin "falsely claimed that DMA had not been paid by clients as an excuse for not paying plaintiff and other stylists. Instead, defendants claimed that they were 'advancing' moneys to plaintiff and other stylists, deceitfully claiming that the stylist owed DMA money for ostensibly un-reimbursed 'advances.'"[14] By offering the advance, "Martin would gain the confidence of the stylists so that she could continue to further swindle them."[15] The Amended Complaint also alleges that Martin routinely "invoiced clients for inflated and false charges for wardrobe and other related expenses beyond the proper fees" and "directed her employees to submit (via U.S. mail and facsimile, using interstate telephone wires) bogus receipts to the celebrity clients for items intended for Martin's own personal wardrobe...."[16]

### C. Moses Discovers the Scheme

In late 2003, after Moses had not received payments for some time, Moses began contacting clients herself to inquire why they had not paid DMA for her work.[17] These clients informed Moses that they had in fact remitted payment to DMA shortly after having received DMA's invoices.[18] Then, on or about December 4, 2003, Moses visited the DMA office in Manhattan where she demanded copies of her invoices, and DMA employees Clarence Hall and Millicent Williams provided her with some of her outstanding invoices along with a list of invoices for which plaintiff was owed money.[19] Moses alleges that this list "corroborates that DMA had been paid for these jobs by clients" and "catalogues the deceit of defendant Martin, who continued, up until March, 2004 to assert that DMA had not been paid by these clients for these jobs and continued to deny she owed plaintiff any money."[20] Moses also alleges that "DMA employees further indicated that they did not know why defendant Martin was keeping plaintiff's money and are well aware that defendant Martin has been stealing in order to support her extravagant lifestyle."[21]

### D. Moses Files Suit

Moses filed her Complaint on February 24, 2004 and an Amended Complaint on May 19, 2004. In her Amended Complaint and accompanying Amended RICO Statement ("ARS"),[22] plaintiff provides the dates and details of "dozens of separate acts of mail and wire fraud commencing in March, 2001 and extending to the present," perpetrated against Moses, other stylists and their celebrity clientele.[23] Moses asserts that these "acts collectively constitute a 'pattern of racketeering activi-

---

12. *Id.* ¶ 28.

13. *Id.* ¶ 33.

14. *Id.* ¶ 29.

15. *Id.* ¶ 28.

16. *Id.* ¶ 34.

17. *See id.* ¶ 30; Pl. Mem. at 5.

18. *See* Compl. ¶¶ 30–31.

19. *See id.* ¶ 31.

20. *Id.*

21. *Id.*

22. My individual rules require a party alleging a RICO violation to submit a RICO Statement, which is considered part of the complaint.

23. Compl. ¶ 35.

ty.' "[24]

## III. LEGAL STANDARD

"Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint *only* if it is clear that no relief could be granted under *any* set of facts that could be proved consistent with the allegations.' "[25] Thus, a plaintiff need only plead " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."[26] Simply put, "Rule 8 pleading is extremely permissive."[27]

At the motion to dismiss stage, the issue " 'is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.' "[28]

The task of the court in ruling on a Rule 12(b)(6) motion is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."[29] When deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor.[30]

Rule 9(b) sets forth additional pleading requirements with respect to allegations of fraud. Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." But, under Rule 9(b), "[m]alice, intent, knowledge and other condition of mind of a person may be averred generally." Rule 9(b) "applies to civil RICO claims for which fraud is the predicate illegal act."[31]

## IV. DISCUSSION

### A. Claims Against Martin

 Defendants seek to dismiss the breach of contract, fraud, conversion, negligent misrepresentation and unjust enrichment claims against Martin, arguing that the Court should not pierce the corporate veil. "To pierce the corporate veil under New York law, a plaintiff must prove that: (1) the owner exercised such control that the corporation has become a mere instrumentality of the owner, who is the real actor; (2) the owner used this control to commit a fraud or 'other wrong'; and (3) the fraud or wrong results in an unjust loss or injury to the plaintiff."[32] Allegations of a lack of corporate formali-

**24.** *Id.*

**25.** *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (emphasis added) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

**26.** *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (quoting Fed.R.Civ.P. 8(a)).

**27.** *Wynder v. McMahon,* 360 F.3d 73, 77 (2d Cir.2004).

**28.** *Phelps v. Kapnolas,* 308 F.3d 180, 184–85 (2d Cir.2002) (per curiam) (quoting *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998)).

**29.** *Saunders v. Coughlin,* No. 92 Civ. 4289, 1994 WL 88108, at *2 (S.D.N.Y. Mar. 15, 1994).

**30.** *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002).

**31.** *Moore v. PaineWebber, Inc.,* 189 F.3d 165, 172 (2d Cir.1999).

**32.** *In re Vebeliunas,* 332 F.3d 85, 91–92 (2d Cir.2003) (citing *Freeman v. Complex Computing Co., Inc.,* 119 F.3d 1044, 1052 (2d Cir. 1997)).

ties, commingling of funds, and self-dealing may be sufficient to support a claim seeking to pierce the corporate veil.[33]

The Amended Complaint alleges that DMA "acted as the alter-ego, business conduit and instrumentality of defendant Martin."[34] It also claims that "Martin used the proceeds from racketeering activity for personal purposed, [sic] including the purchase of luxury items, international travel, Swedish massage treatments for defendant Martin and her ex-boyfriend and other non-legitimate purposes."[35] Here, "it cannot be said that the complaint 'is totally devoid of solid, nonconclusory allegations'" regarding Martin's use of DMA as her corporate alter-ego.[36] As a result, defendants' motion to dismiss the breach of contract, fraud, conversion, negligent misrepresentation and unjust enrichment claims against Martin is denied.

## B. Conversion

■ "'Conversion is any unauthorized exercise of dominion or control over property by one who is not the owner of the property which interferes with and is in defiance of a superior possessory right of another in the property.'"[37] When the original possession is lawful, "'conversion does not occur until the defendant refuses to return property after demand or until he sooner disposes of the property.'"[38]

■ "To maintain a claim for conversion, a plaintiff must show: (1) the property subject to conversion is 'a specific identifiable thing;' (2) plaintiff had 'ownership, possession or control' over the property before its conversion; and (3) defendant 'exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights.'"[39] However, an action for conversion cannot be validly maintained "where damages are merely being sought for breach of contract."[40] Rather, a plaintiff must show acts that were unlawful or wrongful as opposed to mere violations of contractual rights.[41]

■ The money at issue here is specifically identifiable as payments for the celebrity stylist services provided by Moses to her customers. Moses was the rightful owner of this money as the provider of the

---

**33.** See, e.g., Int'l Credit Brokerage Co., Inc. v. Agapov, 249 A.D.2d 77, 671 N.Y.S.2d 64, 65 (1st Dep't 1998). "Under New York choice of law principles, 'the law of the state of incorporation determines when the corporate form will be disregarded and liability will be imposed on shareholders.'" Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir.1995) (alterations omitted) (quoting Kalb, Voorhis & Co. v. American Fin. Corp., 8 F.3d 130, 132 (2d Cir.1993)). Because DMA is a New York corporation, New York law determines whether the corporate veil can be pierced in this instance.

**34.** Compl. ¶ 14.

**35.** ARS at 31.

**36.** Agapov, 671 N.Y.S.2d at 65 (quoting Sequa Corp. v. Christopher, 176 A.D.2d 498, 574 N.Y.S.2d 565 (1st Dep't 1991)).

**37.** Schwartz v. Capital Liquidators, Inc., 984 F.2d 53, 53 (2d Cir.1993) (quoting Meese v. Miller, 79 A.D.2d 237, 436 N.Y.S.2d 496, 500 (4th Dep't 1981)).

**38.** Id. at 54 (quoting Johnson v. Gumer, 94 A.D.2d 955, 464 N.Y.S.2d 318, 319 (4th Dep't 1983)).

**39.** Phansalkar v. Andersen Weinroth & Co., L.P., No. 00 Civ. 7872, 2001 WL 1524479, at *24 (S.D.N.Y. Nov 29, 2001), vacated on other grounds, 344 F.3d 184 (2d Cir.2003) (quoting Briarpatch Ltd., LP v. Geisler Roberdeau, Inc., 148 F.Supp.2d 321, 327 (S.D.N.Y.2001)).

**40.** Peters Griffin Woodward, Inc. v. WCSC, Inc., 88 A.D.2d 883, 452 N.Y.S.2d 599, 600 (1st Dep't 1982).

**41.** See Calcutti v. SBU, Inc., 223 F.Supp.2d 517, 523 (S.D.N.Y.2002).

services to her customers. While DMA was authorized to collect payments from Moses's customers for whom it had entered into deal memos, it was obliged to transfer the payments, less the twenty percent commission, to Moses. Although Moses demanded that DMA remit the payments to her,[42] DMA retained control over the revenue and thus interfered with plaintiff's superior possessory right.

DMA's continued retention of the payments collected from plaintiff's customers without authorization and in defiance of plaintiff's superior right of ownership is sufficient to establish conversion as an action distinct from any breach of contract claim.[43] Accordingly, the motion to dismiss the conversion claim is denied.

## C. Fraud

■ To prove fraud under New York law, " 'a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance.' "[44] "Rule 9(b) requires that allegations of fraud be pleaded with particularity. Thus we have explained that when a complaint charges fraud, it must (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3)

state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent."[45] Plaintiff has pled her allegations of fraud with the requisite particularity.

■ The Amended Complaint specifies several occasions on which Martin made material false representations to Moses. For example, Moses alleges that on March 25, 2001, Martin told her that "defendants did not owe plaintiff money," "that [Martin] did not withhold any portion of the eighty percent owed plaintiff" and that Martin had not been paid by Moses's clients for her work.[46] Moses claims that these statements were false because Martin did in fact withhold a portion of the eighty percent owed plaintiff and that Martin had in fact been paid by Moses's clients for her work. Moses also identifies three other dates on which Martin falsely represented that DMA did not owe Moses any money when in fact DMA did owe money to Moses.[47] Finally, Moses describes three different occasions on which Martin misrepresented the amount that Moses's clients had budgeted for wardrobe expenses (thereby limiting the amount that Moses would be owed), and then invoiced the clients for greater amounts in order to pocket the difference.[48] These assertions sufficiently allege that defendants made material false representations. Moses has also sufficiently pled the intent,[49] reliance

---

42. *See, e.g.,* Compl. ¶ 30 ("plaintiff again demanded payment from defendant Martin").

43. *See Fabry's S.R.L. v. IFT Int'l., Inc.,* No. 02 Civ. 9855, 2003 WL 21203405, at *4 (S.D.N.Y. May 21, 2003) (allowing conversion claim against distributor for failing to transfer to manufacturer money that distributor received from manufacturer's customers).

44. *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.* 375 F.3d 168, 186–87 (2d Cir.2004) (quoting *Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank,* 57 F.3d 146, 153 (2d Cir.1995)).

45. *Harsco Corp. v. Segui,* 91 F.3d 337, 347 (2d Cir.1996).

46. Compl. ¶ 36; ARS at 11.

47. *See* Compl. ¶¶ 48–50; ARS at 19–21.

48. *See* Compl. ¶¶ 44, 46; ARS at 13, 16–18.

49. *See, e.g.,* Compl. ¶ 16 ("Martin deliberately concealed from plaintiff"); *id* ¶ 17 ("in furtherance of her scheme to defraud and steal from plaintiffs").

and damages elements of a fraud claim.[50]

■■■ Defendants assert, however, that plaintiff's fraud claim is merely a restatement of her breach of contract claim and that it must therefore be dismissed.[51] "Where the alleged fraud arises out of the same facts that form the basis for a plaintiff's cause of action for breach of contract, the plaintiff has failed to state a legally sufficient cause of action for fraud."[52] Thus, in order to support a claim for fraud where a contract exists, a party must either: "(i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentations and unrecoverable as contract damages."[53] Plaintiff argues that defendants owed her a fiduciary duty distinct from their obligation to perform under the Agreement.[54] I agree.

■■■ "Broadly stated, a fiduciary relationship is one founded upon trust or confidence reposed by one person in the integrity and fidelity of another."[55] "A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation."[56] "While the 'exact limits' of what constitutes a fiduciary relationship are 'impossible of statement,' a fiduciary relationship may be found in any case 'in which influence has been acquired and abused, in which confidence has been reposed and betrayed.'"[57] "An agent is a fiduciary with respect to the matters within the scope of the agency."[58]

In support of their assertion that no fiduciary duty existed, defendants rely on *Bridgestone/Firestone, Inc. v. Recovery*

---

**50.** In the ARS, Moses makes the following statement regarding reliance and damages.

> By virtue of these conversations and other similar conversations where defendant Martin falsely indicated that she had not been paid by clients and that defendants did not owe plaintiff any money, plaintiff was fraudulently induced to continue relying upon defendants as her agents in the celebrity imaging business. Therefore, plaintiff was induced to enter into additional styling contracts with defendants and to continue working with and for defendants. Plaintiff was thereby damaged by defendants directly as a result of defendants having lied to and deliberately refused to pay plaintiff for work performed.

ARS at 21. *See also* Compl. ¶ 21 ("But for Martin's false promises and misrepresentations of material facts, plaintiff would not have entered into business or contracted with defendants and would not have lost over two hundred thousand dollars in revenues.").

**51.** *See* Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss Amended Complaint ("Def.Mem") at 13; Defendants' Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss Amended Complaint at 9.

**52.** *W.B. David & Co., Inc. v. DWA Communications, Inc.*, No. 02 Civ. 8479, 2004 WL 369147, at *4 (S.D.N.Y. Feb.26, 2004) (citing *Locascio v. Aquavella*, 185 A.D.2d 689, 586 N.Y.S.2d 78, 79 (4th Dep't 1992)).

**53.** *Bridgestone/Firestone, Inc. v. Recovery Credit Svcs., Inc.*, 98 F.3d 13, 20 (2d Cir.1996) (internal citations omitted).

**54.** *See* Pl. Mem at 16–21.

**55.** *Penato v. George*, 52 A.D.2d 939, 383 N.Y.S.2d 900, 904 (2d Dep't 1976).

**56.** Restatement (Second) of Torts § 874, cmt. a.

**57.** *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F.Supp.2d 198, 218 (S.D.N.Y.2002) (quoting *Penato*, 383 N.Y.S.2d at 904).

**58.** 3 Am.Jur.2d *Agency* § 205 (citing *Evvtex Co., Inc. v. Hartley Cooper Assocs. Ltd.*, 102 F.3d 1327, 1332 (2d Cir.1996)).

*Credit Svcs., Inc.*[59] In that case, a credit card company sued its collection agent, alleging that the collection agent had failed to remit monies collected on the credit card company's account. Finding that the collection agent "did not occupy a position of trust or confidence with regard to [the credit card company] that imposed obligations beyond the express agreements,"[60] the Second Circuit stated the following reasons for holding that the agent did not owe the credit card company a fiduciary duty:

> He had little discretion to exercise, his obligations under the contract being straightforward and fixed. Whatever trust and confidence was placed in him had solely to do with his carrying out his obligations under the contract. Nor was he relied upon for advice or the exercise of judgment based on superior information or professional expertise.[61]

DMA's relationship with Moses, by contrast, exhibits all of the elements found lacking in *Bridgestone*. DMA had unfettered discretion to negotiate with Moses's celebrity clients on Moses's behalf by setting prices and other terms of the deal memos. Moses relied upon DMA's advice in structuring the terms of the arrangements with her clients based on DMA's superior knowledge about the industry and professional expertise in managing celebrity stylist businesses. Accordingly, DMA owed Moses a fiduciary obligation beyond the terms established by the agreement. As a result, defendants' motion to dismiss plaintiff's fraud claim is denied.

## D. RICO Act Violations

### 1. Section 1962(a)

To state a RICO claim under section 1962(a), a plaintiff must allege (1) that " 'the defendants used or invested racketeering income to acquire or maintain an interest in the alleged enterprise,' "[62] and (2) " 'injury by reason of defendants' investment of racketeering income in an enterprise, as distinct from injury traceable simply to the predicate acts of racketeering alone or to the conduct of the business of the enterprise.' "[63] "Failure to satisfy this two part test will result in the dismissal of the plaintiffs' claims."[64]

Moses alleges that the proceeds from the racketeering activity were either used by Martin for personal purposes or used "in the continuing of the enterprise."[65] Using funds for personal purposes, however, is not "us[ing] or invest[ing] racketeering income to acquire or maintain an interest in the alleged enterprise."[66] Furthermore, to the extent that racketeering proceeds were used "in the continuing of the enterprise," courts have held that, " '[a]s a matter of law, reinvestment of racketeering income [in the enterprise] is insufficient to make out a cause of

---

**59.** 98 F.3d 13.

**60.** *Id.* at 20.

**61.** *Id.*

**62.** *W. 79th St. Corp. v. Congregation Kahl Minchas Chinuch*, No. 03 Civ. 8606, 2004 WL 2187069, at *10 (S.D.N.Y. Sept.29, 2004) (quoting *Allen v. New World Coffee, Inc.*, No. 00 Civ. 2610, 2002 WL 432685, at *2 (S.D.N.Y. Mar.19, 2002)).

**63.** *Ideal Steel Supply Corp. v. Anza*, 373 F.3d 251, 264 (2d Cir.2004) (internal quotations and citations removed) (citing and quoting *Ouaknine v. MacFarlane*, 897 F.2d 75, 82–83 (2d Cir.1990)).

**64.** *W. 79th St. Corp.*, 2004 WL 2187069, at *10 (quoting *Protter v. Nathan's Famous Sys., Inc.*, 925 F.Supp. 947, 954 (E.D.N.Y.1996)).

**65.** ARS at 31.

**66.** *W. 79th St. Corp.*, 2004 WL 2187069, at *10.

action under RICO.'"[67] In any event, plaintiff never alleges an injury caused by defendants' investment of racketeering funds into the enterprise; rather, plaintiff only alleges injuries that arose out of the predicate acts themselves.[68] Accordingly, plaintiff's section 1962(a) claim is dismissed.[69]

## 2. Section 1962(c)

Section 1962(c) provides, in relevant part, that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in ... interstate ... commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...."[70] Defendant argues that plaintiff's section 1962(c) should be dismissed because the Amended Complaint fails to allege an enterprise distinct from the controlling person or any predicate criminal acts sufficient to establish a pattern of racketeering activity.

### a. Distinct Enterprise

To establish liability under section 1962(c), a plaintiff must allege (and eventually prove) "the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name."[71] In her Amended RICO Statement, plaintiff alleges that "[t]he Deborah Martin Agency, Inc .... constitutes the 'enterprise,'" and that "Martin and other individuals as described herein, associated with the enterprise, which is engaged in activities that affect interstate commerce, have conducted, participated, directly and indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity as fully described herein."[72] Thus, plaintiff has identified the

---

**67.** *United States Fire Ins. Co. v. United Limousine Serv., Inc.,* 303 F.Supp.2d 432, 449 (S.D.N.Y.2004) (quoting *Allen,* 2002 WL 432685, at *4). This is so because " '[w]here reinvestment of racketeering proceeds back from the same RICO enterprise is alleged, the injuries stem proximately not from the investment, but from the predicate acts that make up the racketeering activity.'" *W. 79th St. Corp.,* 2004 WL 2187069, at *11 (quoting *Falise v. American Tobacco Co.,* 94 F.Supp.2d 316, 349 (E.D.N.Y.2000)). *See also Soberman v. Groff Studios Corp.,* No. 99 Civ. 1005, 1999 WL 349989, at *5 (S.D.N.Y. June 1, 1999) ("[A]llegations that the money was used or invested to further the same scheme are insufficient, since they do not allege a distinct injury."); *Mehrkar v. Schulmann,* No. 99 Civ. 10974, 2001 WL 79901, at *5 (S.D.N.Y. Jan.30, 2001) (same). *Accord Protter,* 925 F.Supp. at 954 ("Th[e] investment-injury requirement is not satisfied merely because the defendant/enterprise has reinvested the money from the racketeering acts back into its own operations, thus enabling the scheme to continue.... [P]laintiff must show that *it* was injured by the investment itself.") (emphasis added).

**68.** *See* Plaintiff's Supplemental Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl.Supp.Mem.") at 3.

**69.** *See Ouaknine,* 897 F.2d at 83 ("[T]o state a claim for civil damages under [section] 1962(a), a plaintiff must allege injury from the defendants' investment of racketeering income in an enterprise.").

**70.** 18 U.S.C. § 1962(c). The term "person" includes "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). The term "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

**71.** *Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158, 158, 121 S.Ct. 2087, 150 L.Ed.2d 198 (2001).

**72.** ARS at 28, 31.

"person" as "Martin and other individuals," and the "enterprise" as DMA.[73]

The issue, then, is whether a "person" comprising a corporation's owner and certain of her employees is sufficiently distinct from the corporation itself to fulfill section 1962(c)'s distinctness requirement. In *Cedric Kushner Promotions, Ltd. v. King*, the Supreme Court squarely addressed this issue, holding that the plaintiff had fulfilled the distinctness requirement by alleging that Don King the individual was the "person" who associated with or was employed by Don King Productions, the RICO "enterprise," an incorporated entity of which King was the president and sole shareholder.[74] The Court reasoned that "[t]he corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status," and "nothing in the statute . . . requires more 'separateness' than that." [75] Here, plaintiff has met the distinctness requirement by charging Donna Martin as the "person" associated with or employed by DMA, the "enterprise," an incorporated entity of which Martin was the "exclusive Principal, Owner and President." [76]

■ Earlier in this Opinion I held that Moses may be able to pierce DMA's corporate veil and pursue her state law claims directly against Martin.[77] If Moses is successful in this effort then DMA would no longer be "a distinct legal entity"—despite its corporate form. Such a conclusion would bar a section 1962(c) claim. This conflict, however, does not preclude plain-

---

73. Plaintiff often blurs the distinction between the "person" that conducted the racketeering activity and the "enterprise" that facilitated the alleged racketeering. For example, in contrast to her statement in the ARS, plaintiff argues that Moses "has identified . . . an enterprise consisting of Martin and the [DMA] that, in the shadow of the [DMA's] legitimate business, conducted illegitimate activities to defraud plaintiff and other stylists, as well as the [DMA's] clients. The fraudulent activities did not necessarily affect all of the styling contracts handled by the [DMA], so the enterprise and the [DMA] are distinct." Pl. Supp. Mem. at 8. Thus, plaintiff has variously identified DMA as the enterprise and the group of people, led by Martin and her followers, as the enterprise. These conflicting assertions are confusing. However, because RICO itself can be confusing, I require a party alleging claims under RICO to submit a RICO statement along with the complaint, which aids the Court in understanding how a party's allegations fits into the confines of a civil RICO claim. Accordingly, because the RICO statement pleads the RICO cause of action with the most specificity, I will accept, for purposes of this Motion, that plaintiff intends to identify the "person" as Martin and her coconspirators, and the "enterprise" as DMA.

74. *See Cedric*, 533 U.S. at 163, 121 S.Ct. 2087. Astoundingly, neither plaintiff's nor defendants' counsel cited to *Cedric*, despite its direct relevance to the issue at hand. Prior to the Supreme Court's decision in *Cedric*, the Second Circuit had held that an owner/employee of a corporation was part of, not separate from, the corporation. In *Cedric*, however, the Supreme Court instructed that the statute requires "no more than the formal legal distinction between 'person' and 'enterprise' (namely, incorporation) that is present here." *Id.* at 165, 121 S.Ct. 2087. Plaintiff's failure to cite this case could have resulted in the dismissal of her claim. Defendants' failure is even more troubling. Courts do not approve of "the ostrich-like tactic of pretending that potentially dispositive authority against a litigant's contention does not exist." *Szabo Food Serv. Inc. v. Canteen Corp.*, 823 F.2d 1073, 1081 (7th Cir.1987) (quoting *Hill v. Norfolk & Western Ry.*, 814 F.2d 1192, 1198 (7th Cir.1987), *cert. dismissed*, 485 U.S. 901, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988) (imposing sanctions for failing to reveal to court contrary controlling authority)).

75. *Cedric*, 533 U.S. at 162, 121 S.Ct. 2087.

76. Compl. ¶ 7.

77. *See supra* Part IV.A.

tiff from pleading both theories, even though they are mutually exclusive. "Under Rule 8(e)(2) of the Federal Rules of Civil Procedure, a plaintiff may plead two or more statements of a claim, even within the same count, regardless of consistency." [78] Accordingly, defendants' motion to dismiss the section 1962(c) claim against Martin and her coconspirators is denied. However, Moses must eventually opt for one of the two theories: either Martin is the alter-ego of DMA *or* Martin and DMA are legally distinct entities.[79]

### b. Pattern of Racketeering Activity

"A plaintiff seeking to demonstrate a pattern of racketeering activity under [section] 1962 must allege (1) at least two predicate acts of racketeering occurring within a ten-year period; (2) that the predicate acts are related to each other; and (3) that the predicate acts amount to or pose a threat of continued criminal activity." [80] Plaintiff asserts as predicate acts "dozens of separate acts of mail and wire fraud commencing in March, 2001 and extending to the present." [81] Defendants argue that the Amended Complaint fails to allege any predicate acts and therefore the section 1962(c) claim must be dismissed.[82] I disagree.

"RICO defines racketeering activity to include mail fraud in violation of 18 U.S.C. § 1341 and wire fraud in violation of 18 U.S.C. § 1343." [83] A plaintiff claiming a violation of the mail and wire fraud statutes must allege the elements of the offense: "(i) a scheme to defraud (ii) to get money or property, (iii) furthered by the use of interstate mail or wires." [84]

*First*, as discussed above, Moses has successfully pled a claim of common law fraud. The mail and wire fraud statutes are broader than a claim of common law fraud.[85] It follows, *a fortiori*, that Moses

---

**78.** *Henry v. Daytop Vill., Inc.*, 42 F.3d 89, 95 (2d Cir.1994). Fed.R.Civ.P. 8(e)(2) provides:

> A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds. All statements shall be made subject to the obligations set forth in Rule 11.

**79.** *See Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*, 341 F.Supp.2d 258, 271–73 (S.D.N.Y.2004) (holding that under Rule 8(e)(2), while plaintiff "may not press [inconsistent] claims to judgment, it is free to litigate both").

**80.** *United States Fire Ins.*, 303 F.Supp.2d at 448 (citing *Cofacredit, S.A. v. Windsor Plumb-*

*ing Supply Co., Inc.*, 187 F.3d 229, 242 (2d Cir.1999)).

**81.** ARS at 10.

**82.** Defendants only offer general propositions of law with respect to the relatedness and continuity elements of a section 1962(c) claim, without any attempt to apply the facts of this case to the law. *See* Def. Mem. at 7. Nonetheless, a deferential reading of the Complaint reveals that the alleged fraudulent acts are both related and continuous.

**83.** *Ideal Steel Supply Corp.*, 373 F.3d at 256 (citing 18 U.S.C. §§ 1961(1), 1341, 1343).

**84.** *United States v. Autuori*, 212 F.3d 105, 115 (2d Cir.2000). *See also Zito v. Leasecomm Corp.*, No. 02 Civ. 8074, 2004 WL 2211650, at *10 (S.D.N.Y. Sept. 30, 2004).

**85.** *See Sony Music Entm't, Inc. v. Robison*, No. 01 Civ. 6415, 2002 WL 272406, at *5 (S.D.N.Y. Feb. 26, 2002); *Ray Larsen Assocs., Inc. v. Nikko Am., Inc.*, No. 89 Civ. 2809, 1996 WL 442799, at *5 (S.D.N.Y. Aug.6, 1996) ("Because [the mail and wire fraud statutes]

has successfully pled acts of fraud under RICO.

*Second,* Moses described with particularity multiple occasions on which Martin, using interstate wires, misrepresented material facts to Moses in order to steal Moses's money.[86] She also describes ten different invoices that DMA sent, using interstate mail and wires, to Moses's customers with the wrongful intent of keeping any money received for Martin's own use.[87] Many of those receipts were marked "paid," even though Moses alleges that she never received the proceeds.

Defendants argue that "[p]laintiff is unable to explain how the sending of invoices stating that they were paid were fraudulent,"[88] and plaintiff concedes that "mailing receipts marked 'paid,' . . . may not, in themselves constitute instances of mail fraud. . . ."[89] However, the communication need not contain a false statement for Moses to plead a RICO claim based on mail or wire fraud.[90] "Even mailings that are innocent on their face may be in furtherance of a fraudulent scheme in violation of mail or wire fraud statutes because it is clear that [t]he mailings themselves

need not contain misrepresentations."[91] "Rather, plaintiff[ ] must merely assert that the use of the mails or the wires was accomplished 'in furtherance of the scheme alleged, which was itself fraudulent. In other words, it is the fraudulence of the scheme itself, not any individual falsehood in any particular mail or wire communication, that must be alleged.' "[92]

As discussed earlier, Martin's alleged misrepresentations to Moses, during various telephone conversations, did contain falsehoods. However, even the facially benign invoices, when viewed in context, clearly served the overall scheme to defraud.[93] Quite simply, sending the invoices to plaintiff's clients enabled defendants to successfully steal plaintiff's money. Thus, defendants' alleged scheme was "furthered by the use of interstate mail."[94]

■ Finally, plaintiff alleges numerous occasions on which defendants defrauded third-parties, namely other stylists and their customers. Defendants state that "[t]he Plaintiff has no standing to recover for these other alleged breaches of contract because she was not a party to such

---

are broader than common law fraud, it is possible for a plaintiff to have sufficiently pled mail or wire fraud while having failed nevertheless to plead common law fraud."). The inverse, of course, must be true. If common law fraud is successfully pled, then surely a claim of mail and wire fraud is cognizable.

86. *See supra* Part IV.C.

87. *See* DMA Invoices, Ex. A to ARS (copies of Moses's outstanding invoices); *see also* Compl. ¶¶ 38–47 (describing contents and facts surrounding the ten invoices); ARS at 12–19 (same).

88. Def. Mem. at 6.

89. Pl. Mem. at 8 n. 6.

90. *See Zito,* 2004 WL 2211650, at *11 (holding that mailing of contracts containing no

false statement nevertheless furthered the overall scheme to defraud).

91. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young,* No. 91 Civ. 2923, 1994 WL 88129, at *9 (S.D.N.Y. Mar.15, 1994) (internal quotation marks omitted).

92. *Zito,* 2004 WL 2211650, at *11 (citing *Miltland Raleigh–Durham v. Myers,* 807 F.Supp. 1025, 1056 (S.D.N.Y.1992)).

93. *See id.* (holding that mailing of innocent contracts "took place in concert with defendants' overall modus operandi, and can therefore fairly be said to have been conducted 'in furtherance of' the overall fraud").

94. 18 U.S.C. § 1341.

contracts." [95] While it is true that plaintiff may not recover *damages* as a result of the misconduct directed toward third-parties, plaintiff *may* allege predicate acts involving others to establish a pattern of racketeering activity.[96]

Because plaintiff has alleged a distinct enterprise and predicate acts constituting a "pattern of racketeering activity," defendants' motion to dismiss the section 1962(c) claim against Martin is denied.

### 3. RICO Claims Against DMA

Moses alleges that DMA should also be held liable under section 1962(c). As discussed earlier, Moses names DMA as the RICO "enterprise." [97] "Neither the Second Circuit nor the Su-

preme Court have definitively settled the extent to which ordinary *respondeat superior* principles make a corporation legally liable under RICO for the criminal acts of its employees." [98] However, a survey of case law reveals a two-step inquiry to determine whether a corporation may be held vicariously liable under RICO for the acts of its employees.

The threshold inquiry is whether holding a corporation vicariously liable would violate the distinctness requirement discussed earlier.[99] Thus, when the plaintiff names the corporation as both a defendant and the RICO enterprise, courts have generally refused to hold the corporation liable because doing so would eviscerate the distinctness requirement.[100]

95. Def. Mem. at 5.

96. *See Attick v. Valeria Assocs., L.P.,* 835 F.Supp. 103, 113 n. 7 (S.D.N.Y.1992) ("Although [plaintiffs] do not have standing to assert claims involving the [ ] scheme, those claims are considered for the limited purpose of determining whether the [defendants] engaged in a 'pattern' of racketeering.").

97. *See supra* Part IV.D.2.a.

98. *USA Certified Merch., LLC v. Koebel,* 262 F.Supp.2d 319, 328 (S.D.N.Y.2003).

99. *See supra* Part IV.D.2.a.

100. *See, e.g., C.A. Westel de Venezuela v. American Tel. & Tel. Co.,* No. 90 Civ. 6665, 1994 WL 558026, at *4 (S.D.N.Y. Oct.11, 1994) (distinctness requirement "would be rendered meaningless if plaintiffs were permitted to name an employee as the RICO person and the corporation as the RICO enterprise, and then to hold the corporation responsible for the employee on a theory of respondeat superior"); *In re CitiSource, Inc. Sec. Litig.,* 694 F.Supp. 1069, 1080 (S.D.N.Y.1988) ("to permit vicarious liability for violations of [section] 1962(c) would permit an 'end run' around the precept that the individual alleged to be the RICO person cannot contemporaneously also be alleged to be the RICO enterprise"); *Rush v. Oppenheimer & Co., Inc.,* 628 F.Supp. 1188, 1194 (S.D.N.Y.1985) ("plain-

tiffs cannot rely on theories of *respondeat superior* to accomplish an end run around th[e] required distinction between person and enterprise under section 1962"); *Kovian v. Fulton County Nat. Bank,* 100 F.Supp.2d 129, 130 (N.D.N.Y.2000) ("Under [section] 1962(c), if a plaintiff chooses to identify a corporation as the enterprise through which its employees, as persons, conducted the RICO activity, that corporation is insulated from liability."); *National Elec. Benefit Fund v. Heary Bros. Lightning Prot. Co., Inc.,* 931 F.Supp. 169, 187 (W.D.N.Y.1995) (observing "general rule ... that a plaintiff may not use [section] 1962(c) to impose vicarious liability on corporate or associative 'enterprises' because to do so would violate that section's requirement that the 'enterprise' and the 'person' be distinct").

Other circuits have also followed the rule. *See, e.g., Miranda v. Ponce Fed. Bank,* 948 F.2d 41, 45 (1st Cir.1991) ("[s]ection 1962(c) does not recognize corporate liability on the enterprise's part under a theory of *respondeat superior*"); *Schofield v. First Commodity Corp. of Boston,* 793 F.2d 28, 32 (1st Cir. 1986) (holding that section 1962(c) does not, as a matter of law, extend liability directly to the enterprise); *Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639,* 883 F.2d 132, 140 (D.C. Cir.1989), *rev'd in part on other grounds,* 913 F.2d 948 (D.C.Cir.1990) (*en banc*) (concluding that

However, at least one court has held a corporation, which was also named as the enterprise, vicariously liable under RICO for the acts of its employee. In *United States v. Knox*,[101] the defendants in a criminal RICO prosecution included a doctor and the corporation through which the doctor operated his medical practice. The indictment alleged that the doctor was the "person," who conducted a pattern of racketeering activity though an "enterprise," his wholly-owned corporation.[102] The court first held that because such an "allegation was sufficient in *King*, ... it is necessarily sufficient here."[103] Next, the court considered whether the corporation could be held criminally liable under RICO based on *respondeat superior*. Relying on *United States v. Najjar*,[104] the court held that "although the indictment describes [the corporation] as the enterprise, based on *respondeat superior*, it properly may be a defendant as well."[105]

The holding in *Knox* is questionable on several grounds. *First*, its reliance on *Najjar* is misplaced. In *Najjar*, the government alleged an association in fact enterprise comprising several individuals and two corporations.[106] Thus, the corporation was only one piece of the enterprise, not the enterprise itself. *Second*, the cases from other circuits cited by *Knox* for the proposition that "normal agency principles apply" in the RICO context only involved circumstances in which the enterprise and the corporation were distinct.[107] *Finally*, the *Knox* court cites no authority for its holding that a corporation may be both an enterprise and a defendant. Rather, it cites inapposite cases and concludes that "[i]t follows that although the indictment describes [the corporation] as the enterprise, based on *respondeat superior* it properly may be a defendant as well."[108] For these reasons, I decline to follow the holding in *Knox*.

holding a corporation liable "depends on the requirement of non-identity of person and enterprise"); *Petro–Tech, Inc. v. Western Co.*, 824 F.2d 1349, 1359 (3d Cir.1987) (holding that imposing *"respondeat superior"* on a corporate defendant named as the RICO enterprise under section 1962(c) "would disrupt the intended operation of [section] 1962(c), by making the [section] 1962(c) enterprise ... liable"); *Landry v. Air Line Pilots Ass'n Int'l AFL–CIO*, 901 F.2d 404, 425 (5th Cir.1990) (holding that it would be "incongruous" to prohibit a RICO person to also be the RICO enterprise, but to allow the enterprise to be held vicariously liable); *Davis v. Mutual Life Ins. Co. of N.Y.*, 6 F.3d 367, 379 (6th Cir. 1993) (observing that "plaintiffs may not use RICO to impose liability vicariously on corporate 'enterprises,' because to do so would violate the distinctiveness requirement"); *Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271, 1281 (7th Cir.1989) (*respondeat superior* appropriate so long as RICO claim is not brought against the enterprise itself); *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 620 (9th Cir.2004) (vicarious liability inappropriate when employer is the RICO enterprise);

*Brady v. Dairy Fresh Prods. Co.*, 974 F.2d 1149 (9th Cir.1992) (vicarious liability would not be imposed upon a corporate defendant if doing so would violate the distinctness requirement).

101. No. Cr. 7:02CR00009, 2003 WL 22019046 (W.D.Va. Aug.22, 2003).

102. *Id.*, at *2.

103. *Id.*

104. 300 F.3d 466 (4th Cir.2002).

105. *Knox*, 2003 WL 22019046, at *4.

106. *See Najjar*, 300 F.3d at 484.

107. *Knox*, 2003 WL 22019046, at *4 n. 1 (citing *Tryco Trucking Co. v. Belk Stores Serv., Inc.*, 634 F.Supp. 1327, 1334 (W.D.N.C.1986); *Morley v. Cohen*, 610 F.Supp. 798, 811 (D.Md. 1985); *Bernstein v. IDT Corp.*, 582 F.Supp. 1079, 1083–84 (D.Del.1984)).

108. *Id.*, at *4.

■ Some courts in this Circuit have intimated that a corporation, identified as the enterprise, may be held vicariously liable under RICO, notwithstanding a violation of the distinctness requirement. In *Amendolare v. Schenkers International Forwarders, Inc.,*[109] for example, the court stated that "many courts have indicated that vicarious liability is at least potentially available to hold the 'enterprise' liable so long as the enterprise is not the innocent 'victim' or 'conduit' of the criminal enterprise."[110] Similarly, in *Volmar Distribs., Inc. v. New York Post Co., Inc.,*[111] the court opined that a defendant, which was also named as the RICO enterprise, could have potentially been held vicariously liable under section 1962(c) for the wrongful acts of its employees because "the congressional policy of holding only culpable 'persons' liable under RICO supplies the ultimate rationale for the non-identity rule and applies irrespective of an identity between the person and the enterprise."[112] Once again, I disagree with this reasoning. *First,* these statements are mere dicta because in neither case was the enterprise identical to the defendant sought to be held vicariously liable for the acts of its employee.[113] *Second,* the majority of courts have held, and I agree, that vicarious liability should not be used as an end-run around the distinctness requirement.[114] Accordingly, a corporation may not be held vicariously liable under section 1962(c) for the acts of its employees if that corporation is also named as the RICO enterprise.

If the court has determined that the corporation and the enterprise are distinct, the second inquiry is whether the corporation benefitted from or played a role in the alleged misconduct.[115] However, if the distinctness requirement is not satisfied, then the court need not consider the second step.

While DMA may have benefitted from and played a role in Martin's misconduct, holding DMA vicariously liable under RICO for Martin's acts would violate the distinctness requirement. Accordingly, defendants' motion to dismiss the RICO claims against DMA is granted.

**109.** 747 F.Supp. 162 (E.D.N.Y.1990).

**110.** *Id.* at 168 (citing *Rush,* 628 F.Supp. at 1196).

**111.** 899 F.Supp. 1187 (S.D.N.Y.1995).

**112.** *Id.* at 1196 n. 10.

**113.** In both *Amendolare* and *Volmar,* the union sought to be held vicariously liable for the acts of its employee was only one actor in an association in fact enterprise made up of other individuals and entities. *See Amendolare,* 747 F.Supp. at 167 (complaint "alleges that the two unions are two 'persons' associated with a larger 'de facto' enterprise"); *Volmar Distribs., Inc. v. New York Post Co., Inc.,* 825 F.Supp. 1153, 1161 n. 6 (S.D.N.Y.1993) (complaint names union as only one defendant in alleged association in fact enterprise that includes other individuals and entities).

**114.** *See supra* note 100 (cataloging cases in which courts have refused to hold corporations liable because doing so would eviscerate the distinctness requirement). While as a policy matter it might be attractive to hold a bad-actor corporate defendant vicariously liable for the wrongful acts of its employees, because doing so would destroy the distinctness requirement established under section 1962(c) it is for Congress, not this Court, to decide whether to change the existing rule.

**115.** *See, e.g., Koebel,* 262 F.Supp.2d at 328 ("Some courts in this Circuit have imposed RICO liability on a corporation for the acts of its employees based, at least in part, on whether the corporation itself benefitted from the scheme.... The weight of the authority in this District supports imposing vicarious liability on corporations in RICO actions based on the centrality of the role played by the corporate entity."). In *Koebel,* the corporation held vicariously liable was *not* named as the RICO enterprise.

## V. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the section 1962(a) claim against both defendants and the section 1962(c) claim against DMA is granted. In all other respects, the motion is denied. A conference is scheduled for Thursday, December 16th at 4:30 p.m. The Clerk of the Court is directed to close this motion (# 16 on the docket).

SO ORDERED: